393 So.2d 574 (1981)
Willie MOSS, Appellant,
v.
KELLER INDUSTRIES, INC., and U.S. Fire Insurance Company, Appellees.
No. QQ-210.
District Court of Appeal of Florida, First District.
January 14, 1981.
Rehearing Denied February 27, 1981.
David H. Levin of Ser, De Cardenas, Levine, Busch & Allen, Miami, for appellant.
H. Jack Miller of Miller & Hodges, Coral Gables, for appellees.
LARRY G. SMITH, Judge.
This appeal by the claimant, Willie Moss, and the cross-appeal by the employer/carrier, presents several issues which we view primarily as factual disputes which we have resolved by concluding that the rulings of the Judge of Industrial Claims are supported by competent substantial evidence.[1] We affirm as to these points, and we further affirm, finding no abuse of discretion, the Judge's ruling allowing the employer/carrier, at the commencement of the initial hearing, to amend their pretrial stipulation filed just two weeks earlier.[2]
The third point presented by the claimant-appellant, raising the issue of whether the Judge properly denied claimant's attorney's *575 fees on that portion of the benefits received by the claimant which were "voluntarily" accepted by the employer/carrier, after the matter was set for hearing on appellant's claims, merits discussion and requires reversal.
The claimant, a truckdriver, suffered head and neck injuries on February 3, 1977, and was paid temporary total disability benefits. On July 13, 1977, Dr. Johns, the treating physician, reported to the employer/carrier that claimant was able to return to work, and that claimant had been advised to see him again in a month if his symptoms persisted. On September 1, 1977 the employer/carrier terminated compensation payments. On September 12, 1977, Dr. Johns again examined claimant, reporting that claimant was "advised again" that he should be able to return to work "at any time," and that claimant was advised to return several weeks after his return to work for discharge if doing well at that time.
On September 23, 1977, the claimant, through his attorney, requested a hearing on his claim,[3] including the issue of his entitlement to permanent benefits. A notice of hearing was mailed on September 29, 1977, scheduling a hearing for January 19, 1978.
On October 17, 1977, claimant's attorney had the claimant evaluated by Dr. Robert Gilbert, who reported that he felt claimant had reached maximum medical improvement, with a fifteen to thirty percent (15% to 30%) permanent partial disability of the body as a whole. The claimant returned to work on November 7, 1977, embarking on a long-distance trucking trip which was terminated on December 3, 1977, when the employer learned that the claimant's driver's license had been suspended, rendering him ineligible to drive. The claimant later testified that he experienced difficulty in driving the truck on this trip, experiencing more frequent headaches, together with soreness and stiffness in his leg, arms, neck and shoulder. He was scheduled for examination by Dr. Johns in December, 1977, but this appointment was cancelled by the doctor's office and rescheduled for January 16, 1978.
At the commencement of the first hearing, on January 19, 1978, the employer/carrier requested permission and was allowed to amend its pretrial stipulation dated January 4, 1978, in which it had contended maximum medical improvement was reached on September 1, 1977, by changing the maximum medical improvement date to "unknown." The hearing proceeded but was not concluded at that time.
Dr. Johns, in the meantime, had examined the claimant on January 16, 1978, determined that the claimant had reached maximum medical improvement, and discharged him with a permanent partial disability rating of between twelve and fifteen percent of the body as a whole. The record does not reveal with clarity when the results of this examination and Dr. Johns' rating were communicated to the employer/carrier. However, on January 31, 1978, the employer/carrier accepted a fifteen percent permanent partial disability and payment on that basis was commenced, effective from January 16, 1978, the date of Dr. Johns' last examination. The second and final hearing on the merits was held on April 24, 1978, which resulted in an order finding that claimant was entitled to additional temporary total disability from September 1, 1977, to September 12, 1977, temporary partial disability of twenty-five percent, based upon diminution of wage-earning capacity; and that the claimant reached maximum medical improvement on January 16, 1978, with twenty-five percent permanent partial disability based on wage-earning capacity loss.
A supplemental hearing on attorney's fees was held on June 6, 1978, resulting in *576 the award of $1,235.75. The Judge of Industrial Claims found that since the employer, through his carrier, voluntarily commenced payment of a rating of fifteen percent permanent partial disability within twenty-one days of the claimant's maximum medical improvement date, attorney's fees would be allowed claimant's attorney based only on the amount of the award in excess of the fifteen percent voluntarily accepted.
As indicated above, the issue that engages our attention and requires discussion is the award of attorney's fees. Claimant's attorney was clearly entitled to attorney's fees for recovery of the additional temporary total disability and temporary partial disability benefits for the claimant, which he received. However, claimant's attorney contends that since his entitlement to fees was established based on recovery of temporary benefits, the payment of which was unsuccessfully resisted by the employer/carrier, it was error to deny recovery of attorney's fees on the fifteen percent permanent disability benefits voluntarily paid by the carrier, notwithstanding the fact that acceptance of this rating was made and payments were commenced within twenty-one days of the claimant's maximum medical improvement date.
Claimant's brief on the attorney's fees question cites Torres v. Eden Roc Hotel, 238 So.2d 639 (Fla. 1970); Sharpe v. Robert E. Lee Painting, IRC Order 2-1258 (November 17, 1972); Davis v. Edwin M. Green, Inc., 240 So.2d 4 (Fla. 1970); Osceola Petroleum Company et al v. Heard, IRC 2-3347 (February 13, 1978); and Ford v. Cunningham-Limp Company, 203 So.2d 326 (Fla. 1967). Appellees' brief cites no authority in support of the judge's ruling, and contains no reference to or discussion of the cases cited by appellant. As a matter of fact, we find no citation of decisional authority whatever in appellees' brief  not even in support of their cross-appeal.
We find that appellant's basic premise  that once the employer/carrier improperly denies or terminates payment of benefits (even temporary benefits) it thereafter becomes liable for attorney's fees on the award of permanent benefits to the claimant, even though such permanent benefits are voluntarily accepted and timely paid by the employer/carrier  can no longer be relied upon as valid. Although such a rule formerly existed, as most clearly enunciated in Ford v. Cunningham-Limp Co., supra, the court in International Paper Co. v. McKinney, 384 So.2d 645 (Fla. 1980), specifically receded from Ford on this point. In International Paper, the court stated (at 646):
The basic question before the court is whether or not an employer, having initially denied compensation for temporary total benefits, is bound to pay an attorney's fee on all subsequent benefits awarded to claimant, even when the subsequent benefits are paid voluntarily and timely.
The court then answered the basic question in the negative, holding (at 648):
An employer's contest of a claim at the beginning of a case does not lock the employer into paying attorney's fees on all subsequent benefits paid if the employer voluntarily and timely pays the additional benefits.
We are not certain, however, that the International Paper case completely resolves the problem here. In United States Steel v. Green, 353 So.2d 86 (Fla. 1977), relied upon in the court's International Paper decision, the employer contested but the claimant was awarded temporary total benefits after a hearing at which the Judge of Industrial Claims found that claimant had not yet reached maximum medical improvement. On review, the Industrial Relations Commission affirmed the claimant's entitlement to benefits, but concluded that he had reached maximum medical improvement. It therefore reversed and remanded to the Judge of Industrial Claims to fix the date of maximum medical improvement and to award benefits accordingly. On remand, the Judge heard testimony only on attorney's fees, fixed the date of maximum medical improvement, and found permanent total disability. He further awarded attorney's fees of $13,000, although the attorney *577 had done no additional work and had already been compensated by payment of $1,200 for his services in securing the temporary disability benefits. In reversing the Industrial Relations Commission's decision, the court condemned the practice of computing fee awards as a percentage of the ultimate benefits awarded to the claimant, and held in part (id. at 88):
... although the code of professional responsibility recognizes that `results obtained' may be taken into account, it was capricious to find that identical services might be worth $1,200 or $13,000 depending upon the mathematics of a workman's compensation award... .
It is clear that under United States Steel v. Green and International Paper Company v. McKinney, supra, the voluntary and timely payment of additional benefits by the employer/carrier, after unsuccessfully defending the payment of benefits in the earlier stages of the case, is not to be viewed as a financial bonanza for claimant's attorneys. However, it also appears to us, as a corollary, that it is equally erroneous to impose a limitation upon claimant's attorney's fees solely on the basis of a mathematical computation, by the mere process of subtracting the voluntarily paid benefits from the total disability benefits ultimately awarded to the claimant. Compare ABC Liquors, Inc. v. Brinkley, IRC Order 2-3662 (January 22, 1979), and Jones Miami Beach Express v. Mula, IRC Order 2-3245 (October 3, 1977), denying attorney's fees where there was a permanent disability award of 40%, on the 20% permanent disability voluntarily accepted by the employer/carrier, and Osceola Petroleum Company v. Heard, IRC Order 2-3347 (February 13, 1978), reversing an award of $23,500 attorney's fees, but allowing recovery of a reduced amount, based upon the employer/carrier's filing of a notice to controvert three days after the injury, followed by acceptance of total disability within 21 days of the date of injury.
This Court has had occasion recently to rule on attorney's fees in a workers' compensation case, holding in St. Juste Mezadieu v. T & R Store Fixtures et al., 391 So.2d 252 (Fla. 1st DCA 1980), that the employer/carrier "cannot resist paying benefits, thereby forcing the issue to an unsuccessful hearing, and then claim afterwards that their remaining payments were voluntary," citing Torres v. Eden Roc Hotel, supra.
Here, the employer/carrier obviously "forced" the claim for additional temporary total and temporary partial benefits to a hearing. Furthermore, in view of the employer/carrier's inaction after receiving the notice of hearing claiming permanent partial disability, which would have been subject to a motion to dismiss as premature[4] if, in fact, they were awaiting a medical report showing maximum medical improvement had been reached[5], the claim for permanent disability benefits could, in a sense, also be considered as "forced" to a hearing. In this connection, we note that although the pretrial stipulation was amended by the carrier at the commencement of the first hearing to show "MMI unknown" (see footnote (2), supra), there was no acceptance of permanent disability benefits until some 12 days after the commencement of the first hearing,[6] although, as indicated above, the existence of permanent disability was confirmed by Dr. Johns' examination, which took place three days prior to the first hearing.[7] Therefore, even *578 if it is considered that a hearing was not actually being "forced," the employer/carrier certainly gave that impression; and in any event they acquiesced in the expenditure of time and effort by claimant's attorney in preparing for and commencing the presentation of the claim at the hearing on January 19, 1978. As a practical matter, under the circumstances here, we see very little difference in the compensable time and effort required on the part of the attorney to recover the temporary benefits, plus the additional 10% permanent disability awarded the claimant, then would have been necessary even in the absence of any voluntary payment by the employer/carrier. It is obvious, of course, that any concession or admission that simplifies or shortens the litigation would be entitled to consideration in determining claimant's attorney's fees. We simply hold here, consistent with United States Steel v. Green, supra, that admissions and voluntary acceptance of benefits "in midstream" cannot be translated into a mathematical reduction in attorney's fees based upon a percentage of the award.
Finally, in view of claimant's attorney's reliance upon case law pre-dating International Paper, claimant's attorney should be permitted to present additional evidence to support his claim for attorney's fees. The order appealed is affirmed in part, and reversed on the issue of attorney's fees, with direction for reconsideration by the Judge of Industrial Claims after receiving additional evidence on the amount of attorney's fees from both parties.
ROBERT P. SMITH, Jr., and WENTWORTH, JJ., concur.
NOTES
[1] Appellant claims error in computation of his average weekly wage, and error by the Judge of Industrial Claims in making incomplete, inconsistant, and unsupported findings of fact. Appellees' cross-appeal urges error in the award of temporary partial disability benefits.
[2] The pretrial stipulation, dated January 4, 1978, was amended by changing the employer/carrier's position on the date of maximum medical improvement from September 12, 1977 to "MMI unknown."
[3] Claim was filed by claimant's attorney on March 4, 1977, although at the time of filing, all benefits due were being paid, and none had been denied. The employer/carrier's contention that the claim was "premature" was raised for the first time at the January 19, 1978, hearing, by inserting that defense in the pretrial stipulation, and by ore tenus motion, which was denied as not being timely made.
[4] See footnote 3, supra.
[5] The employer/carrier's original pretrial stipulation, made on January 4, 1978, in which they claimed September 12, 1977, as the date of maximum medical improvement, indicates a contrary intention.
[6] Fifteen percent accepted on January 31, 1978.
[7] The claimant's request for hearing gave notice of the claim for permanent partial disability well in advance of the January 19, 1978, hearing. It is significant also that the claimant suffered a compound depressed skull fracture, surgically repaired, described by Dr. Johns as a "major injury," with bone being driven into the brain, leaving a hole in claimant's skull about the size of a half dollar. In Dr. Johns' opinion such an injury, where the skull is torn and the brain is damaged, customarily warrants a 15% disability rating. Claimant appeared, fortunately, not to be among the 15% of people with that type injury who suffers seizures, although the doctor stated that he would still be considered to have some disability, and would be more susceptible to another head injury than a person without such a defect.