440 So.2d 76 (1983)
B.P. CONSTRUCTION, INC. and Esis, Inc., Appellants,
v.
Oscar GARCIA, Appellee.
No. AQ-396.
District Court of Appeal of Florida, First District.
November 16, 1983.
*77 H. George Kagan of Miller, Hodges & Kagan, Miami, for appellants.
Lawrence M. Malman, Miami, for appellee.
PER CURIAM.
This cause is before us on appeal from an order of the deputy commissioner finding claimant's low back injury causally connected to his industrial accident and awarding TTD benefits, wage-loss benefits, and attorney fees. We affirm in part and reverse in part.
Oscar Garcia, a 52-year-old, illiterate construction laborer who speaks little English, was injured in a compensable accident on June 12, 1980, when the truck in which he was riding flipped over several times. He was treated by several doctors, including Dr. Bustillo, an orthopedist, who diagnosed a cervical strain, dorsal strain, and mild osteoarthritic degenerative changes of the spine (which probably preexisted the accident), treated claimant with analgesics and muscle relaxants, and released him on October 24, 1980 with a five percent permanent partial impairment.
Claimant returned to work on September 26, 1980 and worked "on and off" until May, 1981, when he quit work because of pain. On June 5, 1981, claimant saw Dr. Grusky, a chiropractor, who found muscle spasms in the entire spine, restriction of movement in the cervical and lumbar spine with accompanying pain, tenderness in the shoulder, headaches, and neck ache, and subluxations in the cervical and lumbar spine. Dr. Grusky found claimant to be MMI on October 28, 1981, with a ten percent impairment of the whole man, based on chronic subluxation of the L-5 vertebra, in line with the AMA Guides, and instructed claimant not to do work that required lifting and bending. On December 14, claimant worked three hours picking tomatoes, *78 but had to quit because of the pain; he has not worked since that time.
After several evidentiary hearings, the deputy issued an order finding claimant TTD from June 13, 1980 to December 18, 1980 and from June 5, 1981 to October 27, 1981. The deputy found claimant MMI as of October 28, 1981, with a ten percent permanent physical impairment, and awarded wage-loss benefits from that date and continuing. Claimant's attorney claimed a fee against the employer/carrier on the theory of bad faith. The employer/carrier conceded bad faith with regard to the period from June 13, 1980 to September 18, 1980, but denied acting in bad faith with respect to the remainder of the claim. The deputy found that the employer/carrier acted in bad faith with regard to the handling of the entire claim, by failing to conduct an investigation and pay compensation. The parties stipulated to the statutory schedule for attorney fees, and the deputy awarded claimant attorney fees of $3,274.69, based upon the benefits secured as of November 28, 1982. The deputy also awarded attorney fees of 15 percent of any future wage-loss benefits, to be paid every six months.
Competent, substantial evidence in the record supports the deputy's findings that claimant's low back injury was causally connected to the industrial accident, that he was temporarily totally disabled as a result of the injury from June 5, 1981 through October 27, 1981, and that his injury resulted in a permanent impairment rating of ten percent of the body as a whole. The deputy's award of TTD benefits from June 5, 1981 through October 27, 1981 is affirmed.[1] We must, however, reverse the deputy's award of wage-loss benefits from October 28, 1981 and continuing, since the record does not demonstrate that claimant conducted an adequate work search, or that a work search was medically excused.
Claimant's one attempt to return to work (picking tomatoes) required constant bending and lifting, activities specifically proscribed by claimant's attending physician, Dr. Grusky. Although it is true that claimant is uneducated and speaks little English, that his work experience has in the past been in construction work and field labor, and that he has physical limitations (lifting and bending), there is no medical evidence that he is incapable of doing any kind of work. A single unsuccessful attempt to undertake an employment which requires activities specifically proscribed by the treating physician does not constitute a good faith effort to test employability. Because claimant has failed to meet his burden of demonstrating an adequate work search or a medical excuse for his failure to conduct such a search, the deputy's award of wage-loss benefits from October 28, 1981 is reversed, without prejudice to claimant's right to seek wage-loss benefits subsequent to that date based upon an adequate work search.
The parties stipulated that a reasonable attorney fee would be one assessed according to the schedule set out in Section 440.34(1), providing a fee which is a percentage of the total amount of benefits secured; the parties disagree, however, on which benefits should be included in this determination. The employer/carrier admit that they insufficiently investigated the claim for TTD benefits for the period immediately following the accident; they assert that attorney fees should be based on the amount of benefits paid for that period only, and not on subsequent benefits paid claimant. We hold that the deputy correctly found that attorney fees should be determined on the basis of total benefits secured as a result of the intervention of claimant's attorney, intervention which was necessitated by the employer/carrier's failure to timely investigate and pay the initial claim. The award of attorney fees based upon the *79 total benefits secured as of November 28, 1982 is affirmed.[2]
The deputy's award of attorney fees based upon 15 percent of future wage-loss benefits that may be paid to the claimant is reversed. Santa Rosa Marble, Inc. v. Ubieta, 436 So.2d 311 (Fla. 1st DCA, 1983).
The cause is remanded to the deputy commissioner for proceedings consistent herein.
ROBERT P. SMITH, Jr., BOOTH and WIGGINTON, JJ., concur.
NOTES
[1] TTD benefits for the period from June 13, 1980 to December 18, 1980 were paid July 20, 1981, with credit for an overpayment.
[2] We note that the total amount of benefits upon which attorney fees are calculated will have to be redetermined and the attorney fees recalculated, and remand to the deputy commissioner for that purpose.