486 So.2d 1378 (1986)
PRESTRESSED SYSTEMS and Claims Center, Employer/Servicing Agent, Appellants,
v.
James E. GOFF, Employee, Appellee.
No. BE-486.
District Court of Appeal of Florida, First District.
April 16, 1986.
*1379 Ronnie Klein Witlin of Witlin & Witlin, Miami, H. Jack Miller of Miller, Hodges, Kagan & Chait, Miami, for appellants.
Irving E. Dunn of Dunn & Johnson, Miami, for appellee.
ERVIN, Judge.
Appellants appeal from an order awarding an attorney fee in the amount of $58,000, which was grounded upon the employer's bad faith in handling the claim. We affirm.
This is the second appearance of the parties before this court. On December 26, *1380 1984, the court per curiam affirmed an award of nursing or attendant care payments in the amount of $200 per week to claimant's mother, during the time that claimant was domiciled at his mother's home receiving such care. Prestressed Systems, Inc. v. Goff, 461 So.2d 260 (Fla. 1st DCA 1984). The deputy's earlier order also reserved jurisdiction for the purpose of later determining whether claimant's attorney was entitled to reasonable attorney's fees, by reason of the employer/servicing agent's (e/s/a's) bad faith in handling the claim. A hearing was later held on the reserved issue, an order was entered, and the e/s/a now appeals the attorney fee awarded.
The e/s/a first argues that the award was erroneous in that it was based upon facts that were not properly in evidence. Specifically, it is urged that the deputy's finding of bad faith could not have been made without his reliance upon the deposition testimony of the e/s/a's claim's adjuster, which was never admitted into evidence.[1] We find this point without merit. As appellee observes, the record does not disclose that any objection to the use of the deposition was brought to the deputy's attention, as permitted by Florida Workers' Compensation Rule of Procedure 4.140(a). As we recognized in Sunland Hospital v. Garrett, 415 So.2d 783 (Fla. 1st DCA 1982), an appellate court will not reverse an issue which was not preserved in the tribunal of first resort.
We are aware that an affidavit was filed in this court by appellants' trial counsel, which recited that the failure of the deposition to be included in the record was brought to the attention of the deputy at the hearing on claimant's motion to tax costs, eight days following the entry of the final order. The affidavit does not state, however, nor does the record otherwise reflect, that any objection was then made regarding the deputy's use of the deposition. As we have no transcript of the taxation of costs hearing, we have no way of ascertaining what transpired. We therefore affirm as to the issue raised.
The e/s/a urges, as an alternative issue, that even if the deposition testimony were properly relied upon, the record as a whole does not support a finding of bad faith in the e/s/a's handling of the claims for attendant care and an increase in claimant's average weekly wage (AWW). It specifically urges that no need for further attendant care was made known to the servicing agent through claimant's treating physician, or indeed any other physician. Nevertheless, the e/s/a was certainly aware of the extent of claimant's massive injuries following his release from the hospital after a stay of more than six months. In fact it voluntarily commenced paying to claimant TTD benefits shortly after the injury and continues to do so even now. Given the information it possessed, it was under a duty to monitor closely claimant's activities, once he returned to his home in a totally disabled condition. It failed to do so.
As is disclosed in the deputy's first order awarding payment for attendant care, claimant was injured on January 12, 1982, when he was knocked from a prestressed concrete slab and fell fifteen or seventeen feet therefrom, striking his head on a concrete beam, causing extensive brain damage. He was taken to the hospital in a semi-comatose state. His neurological condition so deteriorated that a left-frontal craniotomy was required, an intra-cerebral hematoma removed, and a Richmond tube inserted. Claimant remained hospitalized until his release as of July 29, 1982.
The deputy additionally had before him the testimony of claimant's mother who stated that his condition was so bad that he was unable to chew solid foods; that in fact all his food had to be first ground for him; that the mother must provide medication *1381 to claimant during various times of the day; that she must regulate the shower for him because he is unable to determine the temperature of the water; and that she is required to shave him because of his involuntary twitching condition. Medical testimony corroborates that of the mother's, revealing that claimant's gait is unsteady and exhibits a course of jerky tremors on his right side, that he has cognitive impairment and difficulty with recent memory. One doctor opined that claimant was suffering from post-traumatic encephalopathy and was in need of around-the-clock attendant care services. This opinion was shared by claimant's treating physician who agreed that claimant was in need of permanent and continuing attendant care because of both his unpredictable nature and the danger for him to be left alone.
The e/s/a's desultory efforts in continuing its investigation regarding the status of claimant's residual disability could at the minimum be considered a passive failure to investigate. Cf. Layne Atlantic Co. v. Scott, 415 So.2d 837 (Fla. 1st DCA 1982). Although the e/s/a may have experienced difficulty in obtaining information from the treating physician due to the latter's tardiness in returning telephone calls, the e/s/a, no later than the early part of 1983, was placed on actual notice of a rehabilitation specialist's report, recommending that claimant be taken out of the home environment and placed in a group home, where attendant care would be provided, at a cost far greater than that provided by claimant's mother. Thus the dispute by the employer is apparently not whether claimant was in need of attendant care, but rather focuses upon the place where such care should be provided. In the meantime, however, fully knowing the extent of claimant's needs, the e/s/a resisted the claim seeking to compensate claimant's mother for the reasonable value of her services, and continued to resist it until shortly after our affirmance of the award, entered December 26, 1984.
The case at bar clearly involves more than a passive failure of an employer in investigating the extent of claimant's disability, or its delay in providing payment for necessary services, once it was on notice of the need for same, cf. Barosy v. Landscape Crane, 418 So.2d 400 (Fla. 1st DCA 1982), but instead reflects a rejection of a claim for attendant care on the primary ground that the home environment was not the best place where such care should be provided. Its refusal to provide payment was clearly inappropriate. Cf. Trophy World, Inc. v. Gonzalez, 444 So.2d 1146 (Fla. 1st DCA 1984) (the carrier's concern over whether a claimant had received excessive medication did not excuse its delaying payment of an uncontested portion of the bill for a period of over three months). Similarly, once the e/s/a was placed on notice of claimant's need for attendant care, its concern over whether claimant should be placed in a group home and there receive the necessary care did not excuse its refusal to pay claimant's mother for the services she furnished. Under the circumstances, its responsibility to pay the mother without entry of an order for her care continued until a decision was finally reached as to the appropriateness of the place where such care should best be provided.
The e/s/a also appeals the deputy's finding of bad faith caused by its delay in failing to increase claimant's AWW. It contends that its failure to do so until the date of the hearing was reasonable in that its claims manager had sent to the employer a standard cover letter requesting the claimant's wage statement, advising that if the claimant had worked less than thirteen weeks before the accident, the employer should then provide a wage statement of a similar employee. Because the claimant had in fact worked less than thirteen weeks before the accident, the employer returned a wage statement of another employee, which it believed conducted work similar to that of claimant. Further investigation, *1382 however, revealed that the other employee did not perform similar work, because, in addition to doing carpentry, employment similar to that engaged in by claimant, the purported similar employee was responsible for layout work. Based upon the information received from the employer, the servicing agent reasonably based, it is argued, claimant's AWW upon that of the other employee.
We affirm as to this issue as well. The reasonable inferences derived from the deposition testimony of David Bobik, claims manager for the servicing agent, support the deputy's determination that Bobik failed to conduct a proper investigation. In fact, Bobik admitted that if he had done so, he probably would have ascertained that he had not been paying claimant the amount that he was entitled to collect. In the case at bar, the mistake did not involve an insignificant amount, but if promptly ascertained, it would have resulted in $70 more wages per week, or nearly fifty-percent more, after the adjustment, than the AWW on which the e/s/a had based the compensation amount paid to claimant. See Rusty Pelican Restaurant v. Garcia, 437 So.2d 754, 757 (Fla. 1st DCA 1983) (e/c's failure to include the reasonable value of meals in claimant's AWW, and its resistance to the claim until after the final hearing constituted bad faith).
Appellants next complain that the evidence fails to support an award of an attorney's fee in the amount of $58,000, because that sum is based upon an erroneous assessment of benefits obtained, as well as other relevant factors required by Section 440.34, Florida Statutes. Specifically it is urged that the deputy erred in accepting $471,729[2] as the total value of all benefits secured through the intervention of claimant's attorney, in that the determination of such benefits depended upon the use of the mortality tables in order to ascertain claimant's life expectancy, although no permanency rating had as yet been established, as of the date the attorney fee award was entered. Appellant points out that the claimant continues to receive TTD voluntarily from the servicing agent, and that no MMI date has as yet been set. It also contends that because there is testimony that claimant should be able to achieve independent living status within two to five years, the evidence does not support a finding that claimant should be in need of attendant care for the remainder of his life.
We cannot accept the argument that section 440.34(1) requires a fee to be based on only accrued benefits actually awarded. We recognize that ordinarily the mortality tables are used to gauge permanent damages. If a person suffers permanent impairment of the ability to earn money, as distinguished from the loss of actual earnings, the measure of damages is the loss of earning capacity, and in such cases it is proper to consider, among other things, the person's life expectancy. See 17 Fla.Jur.2d Damages, § 54 (1980). In the area of workers' compensation, specifically, the tables are used for the purpose of converting periodic, permanent compensation disability payments into lump sum payments. Section 440.20(12)(b), Florida Statutes (1981), explicitly mandates, in the absence of special circumstances, that the probability of the death of the injured employee "be determined in accordance with the most recent United States Life Tables published by the National Office of Vital Statistics of the United States Department of Health and Human Services."
Notwithstanding the fact that the claimant achieved no permanency rating, we do not consider that the "benefits secured" *1383 provision of section 440.34(1) contemplates in every circumstance a determination of accrued permanent benefits when a deputy is asked to decide the value of all benefits secured. In our view, the mortality tables may appropriately be employed to appraise the value of all anticipated benefits flowing to claimant from the compensable injury, if at the time of the entry of an order establishing the claimant's right to have attorney's fees assessed against the employer, such benefits could be considered reasonably predictable.
This court was recently confronted with a similar issue in Polote Corporation v. Meredith, 482 So.2d 515 (Fla. 1st DCA 1986) (on rehearing), wherein we approved an award of attorney's fees based in part upon the efforts of claimant's attorney in earlier securing PTD benefits for the claimant, notwithstanding that at the time compensability of the claim was first established, only TTD benefits were awarded. In rejecting the e/c's argument that the value of benefits secured to claimant could only relate to the accrued benefits actually obtained when the deputy determined that a statutory ground existed for imposing liability upon the e/c to pay a fee, we replied: "[C]laimant is entitled to recover a reasonable attorney's fee from the employer/carrier for his attorney's services in securing claimant's reasonably predictable benefits flowing from the finding of compensability." 482 So.2d at 517 (emphasis supplied).
Thus, Polote recognizes that a claimant's attorney will not be limited to an award of fees on benefits actually awarded at the time a determination is made that an e/c is liable for the payment of fees, but may be awarded fees based upon all benefits that are then reasonably predictable. Contrast Samper v. W.B. Johnson Properties, Inc., 481 So.2d 88, 91 (Fla. 1st DCA 1986) (deputy erroneously reserved jurisdiction to consider further attorney's fees based upon possible future compensation awards, where nothing in the record suggested that claimant would, after reaching MMI, suffer any permanent impairment, and it would be highly speculative under present circumstances to surmise the contrary); B.P. Construction, Inc. v. Garcia, 440 So.2d 76 (Fla. 1st DCA 1983) (deputy's award of attorney's fees based upon fifteen percent of possible future wage-loss benefits that might be paid to claimant reversed on the implicit determination that such award was too conjectural).
Neither does this case involve, as in International Paper Co. v. McKinney, 384 So.2d 645 (Fla. 1980), a situation wherein only temporary benefits are first contested and awarded, upon which an attorney fee is based; later, permanent benefits are voluntarily provided, and a second fee thereon sought, and denied on the theory that the initial contest of the claim did not by itself "lock the employer into paying attorneys' fees on all subsequent benefits... ." 384 So.2d at 648. The distinction between McKinney and the present case is simply that in the former, the efforts of the attorney were limited to issues affecting only TTD benefits, and his efforts on behalf of his client did not result in the later PTD benefits, which were voluntarily paid to claimant upon his achieving MMI. In the case at bar there is only one claim for attorney's fees based on all reasonably predictable benefits resulting from the scope of the issues already litigated. As stated by Judge Wentworth in her concurring opinion in Polote: "Computation of the value of benefits achieved by particular services will of course depend upon the scope of the issues initially litigated ..., and future benefits may in many instances be entirely speculative." Polote Corporation v. Meredith, 482 So.2d at 518 (emphasis supplied) (Wentworth, J., concurring).
Accordingly, the question in the present case requires a determination of whether, as of the time the deputy found the e/s/a liable for the payment of claimant's attorney's fees on the ground of bad faith in its handling of the claim, it was reasonably predictable that permanent benefits would be awarded to the claimant for the remainder of his expected lifetime, notwithstanding the absence of a present determination *1384 of permanency? We are in agreement that the record supports the deputy's finding that it was reasonably predictable that claimant would require permanent benefits and attendant care for the remainder of his natural life. Although there was testimony that claimant should be able to achieve independent living status within two to five years, there was also opinion testimony by claimant's treating physician that claimant was in need of permanent and continuing attendant care, due to both his unpredictable nature and the danger that might occur to him if he were left alone. There was abundant testimony, as previously recited, from which the deputy could reasonably conclude that claimant would require attendant care for the remainder of his natural life.
In saying the above, it should be emphasized that the reasonable predictable value of the total benefits secured was only one of several factors considered by the deputy in arriving at the amount awarded, $58,000. In fact, if the statutory fee formula had been used exclusively, it would have netted claimant's attorney a fee of $71,550. Instead, the deputy took into consideration the criteria delineated in Lee Engineering & Construction Co. v. Fellows, 209 So.2d 454 (Fla. 1968), codified in section 440.34, and, in calculating the fee, considered not only the value of all reasonably predictable benefits secured to claimant, but also the time and labor involved, the novelty and difficulty of the issues, the nature and length of the relationship between claimant and attorney, the contingent nature of the case, and the fees customarily charged in the area.
The approach followed by the deputy below is one which we endorsed in Williams v. Delta Upsilon Fraternity, 462 So.2d 552, 555 (Fla. 1st DCA 1985), wherein we commented that if a deputy restricts an attorney fee award to benefits actually obtained, without consideration of other factors, any such award entered would fail "to take into consideration the length of time and skill required for claimant's attorneys to establish the severity of claimant's condition and to causally relate her [or his] numerous and serious conditions to the industrial accident." Id. The appropriate inquiry, as Delta Upsilon states, should rather be focused upon "the intrinsic value of the attorneys' efforts in establishing claimant's condition and entitlement to continuing benefits and medical treatment from the employer/carrier... ." Id. at 556 (emphasis supplied).
We have considered appellant's remaining arguments regarding the excessiveness of the fee approved, and find them without merit.
AFFIRMED.
WIGGINTON, J., and McCORD, GUYTE P., Jr. (Ret.), Associate Judge, concur.
NOTES
[1] This court previously granted appellee's motion to supplement the record by including the deposition therein, over the objection of appellant.
[2] The deputy arrived at this figure by adding the following amounts:

Past Attendant/Nursing Care Services in the amount of $16,474.00; Past increase in Compensation Rate in the amount of $8,657.00; Future Nursing Services at the rate of $200.00 per week for the life expectancy of the claimant of 36.8 years per U.S. Life Tables Mandated by F.S. 440. This figure reduced to its present value, taking into consideration that the inflation rate would offset the discount rate of 7%, equals the sum of $368,930.00; Future increase of Compensation Rate at $80.00 per week using the Statutory Discount rate of 4%, totals $77,668.00. These benefits amount to $471,729.00.