509 So.2d 359 (1987)
SAMURAI OF THE FALLS, INC. and Hewitt, Coleman & Associates, Appellants,
v.
Dong Jo SUL, Appellee.
No. BP-174.
District Court of Appeal of Florida, First District.
June 12, 1987.
Rehearing Denied July 31, 1987.
*360 Mily Rodriquez, of Law Offices of Edward Almeyda, Miami, for appellants.
Marvin J. Kristal, of Ira J. Druckman, P.A., Miami, for appellee.
MILLS, Judge.
Samurai of the Falls, Inc. and Hewitt, Coleman & Associates (E/C) appeal from an order of the deputy commissioner awarding bad faith attorney's fees pursuant to Section 440.34(3)(b), Florida Statutes (1981). We affirm in part, reverse in part and remand.
Claimant Sul injured his back in a fall on 25 September 1982. The injury was accepted as compensable and the E/C commenced paying temporary total disability benefits at the incorrect compensation rate (CR) of $105.00 weekly. In May 1983, Sul retained attorney Druckman for the purpose of seeking a change of physician, and obtaining an increase in his average weekly wage (AWW) and CR. Through Druckman's efforts, Sul eventually obtained an increase in his CR to $253 weekly. The E/C conceded at the fee hearing that Druckman was entitled to a fee for obtaining this increase.
On 20 March 1984, the E/C terminated TTD, alleging that Sul had reached maximum medical improvement (MMI) on that date based on a form received from Sul's physician; the form also indicated a permanent impairment of 10%. Sul was notified by the E/C that he would thereafter have to seek wage-loss benefits. On 8 June 1984, attorney Druckman filed a claim for benefits seeking payment of the terminated TTD benefits from 20 March 1984 to 24 May 1984 based on a 7 June 1984 deposition of Sul's physician establishing the actual date of MMI as 25 May 1984.
Despite the physician's testimony, the E/C declined to resume TTD; the claim was heard in November 1984 resulting in an award of TTD for the two-month period in question plus penalties. According to *361 the chronology of events included in Druckman's attorney's fee affidavit, on 6 August 1984, the E/C "pick[ed] up wage-loss from 6/1/84 through 7/31/84"; it does not appear from this affidavit, or from any other evidence that the commencement and payment of wage-loss was not voluntary. Also in August 1984, the E/C re-trained Sul as a flower arranger and he commenced employment in that field on 28 August 1984. It appears that wage-loss of $253.00 weekly has been paid continuously since 1 June 1984.
Sul was still employed in the same job at the time of the August 1986 bad faith attorney's fee hearing, and had earned an average of $75.00 weekly over the two-year period of employment. There was evidence that, based on the seasonal, part-time nature of the field in which Sul had been re-trained, he could not expect to earn substantially more than that over his remaining 8 years of entitlement to wage-loss benefits. Based on this reasonable predictability of future wage-loss payments, Druckman sought a fee based not only on the increase in Sul's CR from 25 September 1982 to 20 March 1984, and the award of TTD from 20 March 1984 to 24 May 1984, but on the remaining weeks of wage-loss as well.
The deputy commissioner found bad faith based on the E/C's initial delay in payment of the proper CR and its refusal to pay TTD voluntarily from 20 March 1984 to 25 May 1984 despite knowledge as of 7 June 1984 that MMI had not been reached until 25 May 1984. He established as the basis for the fee as the increase in Sul's CR from $105.00 to $253.00 weekly and benefits secured from "3/20 to the time of the hearing". However, the only award of record commencing 20 March was the previously discontinued TTD benefits, payable until 24 May. The deputy appears to find, therefore, that the 1 June 1984 commencement of wage-loss benefits by the E/C was the result of Druckman's efforts; no explicit finding on this point is made.
The deputy went on to find that, pursuant to Prestressed Systems v. Goff, 486 So.2d 1378 (Fla. 1st DCA 1986), a fee was due on all "reasonably predictable benefits". Based on the testimony of the rehabilitation counselor, he found it reasonably predictable that the E/C would be responsible for wage-loss benefits of $253.00 weekly through the end of Sul's entitlement thereto in May 1994. Based on total benefits acquired of $140,679, and using the formula found in Section 440.34(1), Florida Statutes, the deputy computed a fee of $21,851.
The E/C first argues on appeal that the deputy erred in finding bad faith. We disagree. "Bad faith" means conduct by the carrier in the handling of a claim which amounts to fraud; malice; oppression; or willful, wanton or reckless disregard of the rights of the claimant. Section 440.34(3)(b), Florida Statutes. Passive delay or denial of benefits are acts subject to the provisions of the statute. Grafton v. Sacred Heart Hospital, 504 So.2d 537 (Fla. 1st DCA 1987).
Here, the E/C concedes entitlement to a fee for the additional benefits obtained by the attorney between 25 September 1982 and 20 March 1984, but denies bad faith for the TTD benefits eventually awarded between 20 March and 24 May 1984, pointing to the form indicating MMI on 20 March. However, after the physician corrected that opinion on 7 June 1984, the E/C forced the TTD claim to a hearing and benefits for the two-month period were not awarded until 20 December 1984. The deputy did not err in his finding of bad faith herein.
However, we find that he did err in relying on Prestressed Systems to base the amount awarded on benefits payable through May 1994. A review of the cases preceding Prestressed Systems will be helpful in explicating this holding. In International Paper Co. v. McKinney, 384 So.2d 645 (Fla. 1980), the issue was whether or not an employer, having initially denied compensability for temporary total benefits, was bound to pay an attorney's fee on all subsequent benefits awarded to claimant, even when the subsequent benefits were paid voluntarily and timely. The International claimant had filed a claim for *362 TTD on 1 March 1972, which the E/C was ordered to pay after a hearing. Three years later, in June 1975, the E/C was notified that claimant was MMI and voluntarily accepted him as PTD. The JIC awarded a fee based on the permanent benefits.
The International claimant relied on appeal on Ford v. Cunningham-Limp Co., 203 So.2d 326 (Fla. 1967). In Ford, the E/C had voluntarily paid TTD and wage-loss from the 1959 accident until January 1965. In February 1965 a claim was filed seeking resumption of TTD, and in May 1965, TTD was ordered resumed. In October 1965, the E/C began voluntarily paying PTD. The JIC awarded a fee based on the PTD as being "at least in part the direct result of the effort of the claimant's attorney." The Court affirmed, stating that the evidence showed that the award, although voluntary and consented to by the E/C, was at least in part the direct result of the effort of the claimant's attorney who had earlier sustained the claimant's right of recovery.
The International court receded from Ford to reverse the JIC's award of a fee. It noted that there had been no claim for PTD and no contest of permanent benefits by the E/C which had voluntarily begun those benefits within 21 days of MMI. Further, there was no evidence of any services rendered by the attorney after TTD was obtained. The International court concluded that the E/C's "contest of a claim at the beginning of a case does not lock the employer into paying attorney's fees on all subsequent benefits paid if the employer voluntarily and timely pays the additional benefits." International at 648.
In Polote Corp. v. Meredith, 482 So.2d 515 (Fla. 1st DCA 1986), the claimant obtained an award of compensability and TTD in August 1982, and became entitled to a fee pursuant to 440.34(3)(c) (compensability disputed and determined in claimant's favor); before the fee hearing, claimant filed a contested claim for PTD in October 1983 which was awarded in January 1984. A fee hearing was held based on all benefits awarded, including PTD. The E/C argued that the fee should be based on the initial finding of compensability, but this court disagree and affirmed the inclusion of PTD.
The court held that a fee was appropriate based on the finding of compensability, and that all other benefits flowed from that finding, i.e. fee should be determined based on the total benefits secured as a result of the intervention of the attorney. Once this finding was made, because the PTD was "reasonably predictable", a fee based on the total was appropriate. Judge Wentworth concurred in the Polote holding because the PTD had been determined before the fee hearing, but noted that "computation of value of the benefits received will of course depend upon the scope of the issues initially litigated." Polote at 518 (emphasis supplied).
This concurring opinion was cited in Prestressed Systems v. Goff, 486 So.2d 1378 (Fla. 1st DCA 1986). In that case, a bad faith fee was awarded based on the value of attendant care benefits won by the attorney for the lifetime of the claimant. This court affirmed, holding that a fee could be based on the "value of all anticipated benefits flowing to the claimant from the compensable injury, if at the time of the entry of an order establishing the claimant's right to have attorney's fees assessed against the employer, such benefits could be considered reasonably predictable." Goff at 1383 (emphasis in original). The court referred to the Polote holding that a "claimant is entitled to recover a reasonable attorney's fee from the employer/carrier for his attorney's services in securing claimant's reasonably predictable benefits flowing from the finding of compensability." Goff at 1383 citing Polote at 517.
The Goff court noted International, but distinguished it in that, in that case, "the efforts of the attorney were limited to issues affecting only TTD benefits, and his efforts on behalf of his client did not result in the later PTD benefits, which were voluntarily paid to claimant upon his achieving MMI." Goff at 1383 (emphasis supplied). In Goff said the court, there was one claim for fees "based on all reasonably *363 predictable benefits resulting from the scope of the issues already litigated", citing J. Wentworth's concurrence in Polote.
The end result of these holdings is that, before the "reasonably predictable" issue can be determined, it must be shown that the benefits on which the fee is desired to be based resulted from the attorney's efforts on behalf of his client and from the scope of the issues already litigated.
In the instant case, the claimant never filed a claim for wage-loss benefits and, indeed, the E/C never disputed his entitlement thereto. On 20 March 1984, the E/C received notification from the treating physician that MMI had been reached on that date with a 10% permanent impairment. The E/C did not challenge the determination of permanency, but simply cancelled TTD and told Sul that, from then on, he would have to file wage-loss forms. The extent of Druckman's efforts after 20 March was to file a claim for the TTD benefits denied between 20 March 1984 and 24 May 1984, which he later won. On 6 August 1984 the E/C voluntarily began wage-loss and has paid those benefits to date. There is absolutely no evidence in the record that the E/C ever disputed entitlement to wage-loss benefits or that any effort on the part of Sul's attorney resulted in their payment.
We therefore find that the payment of permanent benefits did not in any way "flow from" any activity on the part of Sul's attorney, or depend upon the scope of issues litigated by him. The fee awarded below is reversed and the case remanded for recomputation of that fee based on the increase in benefits resulting from the increase in Sul's CR between 25 September 1982 and 20 March 1984, and the TTD award obtained for the period 20 March 1984 and 24 May 1984.
BARFIELD, J., concurs.
WENTWORTH, J., agrees to conclusion.