518 So.2d 1309 (1987)
Patricia Martin BARR, Appellant,
v.
PANTRY PRIDE, Crawford and Company, and Division of Workers' Compensation, Appellees.
No. BQ-447.
District Court of Appeal of Florida, First District.
December 21, 1987.
*1310 Richard A. Sicking of Kaplan, Sicking & Bloom, P.A., Miami, for appellant.
Karen M. Gilmartin of Adams, Kelley & Kronenberg, Miami, for appellees.
WIGGINTON, Judge.
Claimant appeals from the order of the chief commissioner awarding as a reasonable attorney's fee the sum of $2,400. Because claimant is of the opinion that she is due attorney's fees in the amount of $28,614.46 based on benefits obtained, she takes issue with the award. Specifically, claimant maintains that the chief commissioner (1) erred in failing to consider the 185 hours of work allegedly expended by her attorney; (2) erred in failing to award the statutory guideline fee of $28,614.46; (3) erred in holding that a September 1980 signed stipulation was not binding on the carrier; and (4) erred in failing to award fees for the three and one-half hours of preparation for, and attendance at, the hearing to collect attorney's fees. We affirm in part and reverse in part.
Claimant suffered a compensable back injury on January 6, 1975. She was paid temporary total disability benefits at a compensation rate of $87.26 per week until May 22, 1975, when the carrier accepted an 8 percent permanent partial disability rating retroactive to May 15, for twenty-eight weeks at the same compensation rate. Accordingly, payment of permanent partial disability benefits terminated on November 26, 1975.
On April 4, 1975, claimant hired attorney Sicking to represent her, and on April 7 filed a claim, hearing thereon being set for April 2, 1976. However, on January 5, 1976, Mr. Sicking and the carrier's adjuster reached an agreement whereby the carrier reclassified claimant's previous permanency to temporary total disability and reinstituted payment of compensation for those benefits. The carrier thereafter sent out checks for four weeks of back payments.
On August 15, 1977, the carrier concluded that maximum medical improvement had been reached physically as of January 18, 1977, when claimant was rated by a former physician as having a 20 percent permanent impairment of the body, and that MMI had been reached psychologically on August 9, 1977, when claimant was rated by a psychologist as having a 5 percent permanent impairment. Those ratings were translated to a 24 percent impairment of the body as a whole, entitling claimant to eightyfour weeks of permanent partial disability benefits. The carrier paid those benefits less the twenty-eight weeks previously paid (despite the fact that the carrier had previously reclassified those twenty-eight weeks as temporary total disability), and compensation was suspended on September 25, 1978. Accordingly, on October 2, 1978, Mr. Sicking filed a claim "for all compensation benefits to which she may be entitled pursuant to F.S. 440," including permanent total disability benefits.
The claim notwithstanding, at an August 31, 1978 conference, the parties reached an agreement on medical bills whereby the employer/carrier were to pay $3,135. Moreover, on August 14, 1979, the parties agreed to adjust claimant's average weekly wage to $157, resulting in an increase of $6.94 per week in her compensation rate.
Returning to the October 1978 claim, on November 13, 1979, a pretrial stipulation was entered into by the attorneys for both sides, with claim being made for temporary total or temporary partial disability benefits from May 14, 1975 to December 9, 1975, and from August 8, 1977 and continuing; *1311 for permanent total disability benefits; and for medical care by Dr. Goldberg and Dr. Radin. The E/C defended on the grounds that claimant had received all benefits to which she was entitled, and that any disability in excess of 24 percent of the body was not causally related to the accident.
On July 11, 1980, Deputy Commissioner Trask entered an order finding that claimant had not reached maximum medical improvement; that she required psychiatric care related to her injury, to be provided by Dr. Radin; that she would require palliative care indefinitely; and that apportionment did not apply. The E/C was ordered to reclassify all past permanency to temporary total disability and to pay TTD benefits from January 12, 1975, through the date of the order and continuing until claimant was no longer temporarily and totally disabled, with the E/C being entitled to credit for the compensation actually paid during that period. Claimant was also found to be entitled to a reasonable attorney's fee to be paid by the E/C with jurisdiction reserved to determine the amount. Thereafter, on July 25 the carriers paid claimant the amount due under the order and reclassified her previous payments to TTD benefits, but also took a social security offset reducing the weekly rate to $43.91.
In response, on August 25, 1980, Mr. Sicking wrote to the carrier informing it that the social security offset was calculated incorrectly and that it had failed to pay interest, as well as enclosing the bill of Dr. Radin with demand for payment. Request was also made for an "interim attorney's fee" of $2,066. In his letter, Mr. Sicking considered the fee to be interim since "we know what the past compensation is, but we have no way of knowing what the future compensation will be, nor what the bill of Dr. Radin will be... ." Thus, the $2,066.54 fee ultimately paid was calculated on the basis of the benefits received through July 25, 1980, as awarded by the order. Mr. Sicking also stated in the letter that he would prepare the necessary stipulation to that effect.
In response, the carrier filed a form conceding counsel's demands as to the corrected amount of social security offset and that the weekly rate should be $62.07. Thereafter, the carrier wrote to Mr. Sicking, paying interest of $544.81 and $671.92 to correct the social security offset to date. Also included was the check for $2,066.54, inscribed as a fee for interim attorney's fees through July 25, 1980, "per Stipulation." In that same letter, the adjuster requested Mr. Sicking to draw a stipulation for interim attorney's fees.
In reply, counsel sent a letter to the carrier enclosing a stipulation on fees and stating that interest would have to be recalculated. The stipulation indicated it was understood that future attorney's fees would "be based on the compensation benefits paid subsequent to July 25, 1980, and also on medical benefits awarded before and after July 25, 1980," and also provided that the parties were petitioning the deputy commissioner to approve the stipulation. Nonetheless, the stipulation was never presented to, nor approved by, the deputy.
On April 29, 1981, the E/C de-authorized claimant's treating physician, Dr. Goldberg, and offered no alternative care. Approximately one year later, on March 29, 1982, the carrier sent a memo to Mr. Sicking regarding alleged misdated checks, referring to them as payment of "P.T.D. benefits" for March and April.
Thereafter, on April 2, 1982, Deputy Commissioner Trask, following a hearing, entered an order finding the E/C improperly de-authorized Dr. Goldberg and directing them to pay the bills for treatment rendered by Dr. Goldberg following his de-authorization, together with prescriptions and transportation to receive such treatment, and to furnish palliative care under his direction in the future. The deputy also found that the E/C owed claimant's attorney a fee, and jurisdiction was reserved to determine the amount. At this point it should be noted that other than the *1312 $2,066.54 paid as the "interim" fee, no hearing had been held determining a fee based on the July 11, 1980 order.
On August 18, 1982, the carrier accepted claimant as being permanently and totally disabled.
Finally, on June 23, 1986, Mr. Sicking filed a claim for attorney's fees and costs. At the hearing on the claim, without producing time sheets, Mr. Sicking testified that he had expended 185 hours of work over the past eleven years. An additional fee was also requested for the three and one-half hours spent in preparation for and attendance at the fee hearing. Based on the hours expended, at an asserted reasonable hourly rate of $150, Mr. Sicking represented that his fee would amount to $27,750.
In the alternative, a fee was sought based on the statutory guideline fee formula in section 440.34(1), Florida Statutes (1985),[1] by determining the monetary value of all benefits achieved by Mr. Sicking over the course of claimant's estimated life expectancy reduced to reduced to present value. To that end, Mr. Sicking considered not only all of the temporary total disability benefits achieved, but claimed a right to fees based on the permanent total disability benefits subsequently paid by the E/C, which benefits total $113,888.98.
Additionally, counsel included in the benefits the adjustment of the incorrect compensation rate of $6.94 for every week after June 6, 1975, to the date of the hearing, and added to that the present value of the future adjustment, totaling $10,547.44. Similarly, regarding the adjustment of the incorrect social security offset, Mr. Sicking figured every week from July 25, 1980, until claimant reaches the age of sixty-two, arriving at a total of $13,936.88, plus $544.81 in interest on that correction.
Finally, in figuring medical benefits, Mr. Sicking took into account the medical bills paid per the August 31, 1978 agreement of $3,135; the medical bills of Dr. Goldberg per the April 2, 1982 order of $1,377, plus prescriptions and mileage of $9,299.19; medical care per "memo of 8/12/81" of $4,988; as well as the present value of future medical care by Dr. Goldberg based on past rates of $200 per year, plus an estimated $1,500 per year for prescriptions and mileage, totaling $27,450.
Thus, based on the above calculation of benefits, and applying the statutory formula, claimant maintains that Mr. Sicking is entitled to a fee of $28,614.46.
On the other hand, the E/C, has assumed the position that counsel is entitled to a fee based only on those benefits he actually obtained for the claimant calculated up to any particular order or agreement, without regard to future benefits, which they maintain were or will be voluntarily paid. Although during the hearing before the chief commissioner the E/C's attorney, Mr. Kronenberg, testified that he had "no reason to doubt" the alleged 185 hours, he did question how much of that time was actually expended for the claimant "as opposed to monitoring the file over an eleven year period." According to the E/C's calculations, Mr. Sicking is entitled only to $2,400 in fees, consisting of the compensation rate adjustment; the social security offset adjustment; medical care in the amount of $3,135; interest on the compensation rate adjustment; and offset adjustment; and compensation payable as per the order of July 11, 1980. In addition, the E/C has agreed to reimburse claimant's counsel for taxable costs in the amount of $94.80.
Based on the evidence and testimony presented before him, the chief commissioner found the following:
I find that an attorney's fee is owed only on the following items, and that only the following items were obtained for the claimant by her counsel:
$741.85 in compensation rate adjustment; $544.81 in interest due on incorrect social *1313 security offset; $671.92 due for the improper calculation of the social security offset; $3,135 in medical payments made pursuant to the merits order of April 2, 1982; and $7,666.23 for payments due pursuant to the original merits order of July 11, 1980. Thus, I find that the total amount of benefits obtained by counsel for the claimant is in the amount of $12,759.81.
I reject Mr. Sicking's argument that the employer/carrier stipulated to pay him an attorney's fee on all benefits other than those I just enumerated. I have examined the alleged stipulation placed into evidence and find that it has no legal effect because it was not approved by the Deputy Commissioner. The stipulation was based on attorney's fees, and I find that in order for it to have any legal effect at all, it must have been approved by the Deputy Commissioner, and it was not. However, even if the stipulation were to be given legal effect, I do not agree with Mr. Sicking's interpretation of it. A careful reading of the stipulation merely indicates that further attorney's fees, if owed, would be based upon compensation benefits paid subsequent to July 25, 1980, as well as medical benefits awarded before and after July 25, 1980. In this "stipulation," I find that the employer/carrier in no way agreed or obligated itself to pay attorney's fees on all medical and compensation benefits paid thereafter. In addition, the stipulation is not dated, and, as I found previously, it was never approved by an order of the Deputy Commissioner. The "stipulation" therefore has no legal effect.
I also reject Mr. Sicking's contention that he is due a fee on future medical care. No testimony was presented by Mr. Sicking to determine his entitlement to a fee on future medical care. No doctors testified, and Mr. Sicking merely guessed that the claimant would continue to need future medical care with Dr. Leonard Goldberg, simply based on the fact that she has been seeing Dr. Goldberg in the past. Mr. Sicking speculated not only as to the duration of future medical care, but also as to the amount. I sustain the employer/carrier's objection to this speculative testimony, and I find that entitlement to an attorney's fee on future medical care has not been proven.
In addition, I find that no attorney's fee is due on the future payment of compensation benefits, particularly the permanent total disability benefits which the employer/carrier voluntarily and administratively accepted. Although the employer/carrier denied entitlement to compensation benefits during a certain specific limited period of time during the initial stages of these proceedings, all other compensation benefits were timely and voluntarily paid at a proper compensation rate. The fact that the employer/carrier may deny entitlement to a certain classification of benefits at the beginning of the case does not lock them into that position for the remainder of the proceedings. International Paper Company v. McKinney, 384 So.2d 694 [645] (Fla. 1980) [sic].[[2]] There is no evidence to show that medical or compensation benefits were untimely or improperly paid after or between the entry of the two merits orders entered by Deputy Commissioner Trask, and I find that no fee is owed on any future medical or compensation benefits.
In addition, permanent total disability benefits were administratively and voluntarily accepted at a time when the claimant was receiving regular payments of temporary total disability benefits at her correct compensation rate. No evidence was introduced to show that permanent total disability was untimely or improperly accepted. Thus, no fee would be owed on the permanent total disability benefits. At best, the claimant was switched from a temporary total classification, to a permanent total classification, and a mere change in classification of her benefits *1314 occurred. Such a change in classification does not alone warrant an attorney's fee award. Creighton v. Sears, Roebuck and Company, 190 So.2d 762 (Fla. 1966); Basford v. Florida Power & Light Company, 246 So.2d 1 (Fla. 1971). Mr. Sicking also alleged that he had 185 hours in the file, and that a reasonable attorney's fee would be $28,614.46. He did not present any time sheets or a time affidavit to verify those hours, and did not indicate how many of those hours were devoted to securing the benefits that he himself actually obtained for the claimant.
In considering the amount of the fee to be awarded, I have examined all of the factors enumerated by the Supreme Court in Lee Engineering and Construction Company v. Fellows, 209 So.2d 454 (Fla. 1968). I find that contingency of the fee was a factor in this case, since the case is governed by the Workers' Compensation Law in effect as of 1975, which did not allow for the claimant to pay the attorney's fee. I find that the amount of benefits obtained by the claimant through her counsel to be in the amount of $12,759.81. The parties presented no evidence as to whether Mr. Sicking's representation of this claimant precluded him from accepting other cases. There was also no evidence presented as to the novelty or complexity of the issues in this case, and I do find, upon examination of the evidence presented and of the Division file, that this was not an extraordinarily complex or novel case. The abilities of both attorneys for the parties are well known to me, and I acknowledge the fact that both counsel are experienced specialists in the field of Workers' Compensation Law. While Mr. Sicking indicated that he devoted 185 hours to this case, it must be pointed out that he presented no time sheets or time affidavits, and no indication as to how many of the 185 hours were devoted to the benefits that he ultimately obtained for his client.
Based on the foregoing, the chief commissioner applied the total amount of benefits obtained to the "25/20/15" fee formula in section 440.34(1) to arrive at an attorney's fee of $2,291.40. However, he nonetheless adopted the E/C's opinion that a reasonable fee would be $2,400. He therefore awarded that fee and taxable costs to be paid in the amount of $94.80.
Claimant first argues that the chief commissioner erred in awarding an attorney's fee of $2,400 in light of the 185 hours of work expended by Mr. Sicking. She maintains the E/C's counsel conceded that that amount of time was correct and points to the fact that in light of the $2,400 awarded, Mr. Sicking was compensated at a paltry sum of $12.97 per hour. She argues that this is clearly error, citing to Rivers v. SCA Services of Florida, Inc., 488 So.2d 873 (Fla. 1st DCA 1986) and Bill's Equipment and Rentals v. Teel, 498 So.2d 536 (Fla. 1st DCA 1986). In response, the E/C distinguish those cases, particularly on the basis that in both the hours were verified. The E/C argue that although it had no reason to doubt Mr. Sicking's claim of 185 hours, he was not relieved of his burden of proof and his duty to keep time records, citing Orange County School Board v. Van Zant, 400 So.2d 1019 (Fla. 1st DCA 1981), and Brevard County School Board v. Walters, 396 So.2d 1197 (Fla. 1st DCA 1981).
As amazing as it may seem, no evidence of the time expended by counsel was ever produced at the hearing. The necessity for the keeping of adequate time records by an attorney, and the need for evidence on this factor, in keeping with the legislative mandate requiring consideration, among other factors, of the "time and labor required" in performing the legal services for the claimant was strongly recommended by this Court in M. Serra Corporation v. Garcia, 426 So.2d 1118 (Fla. 1st DCA), pet. rev. den., 434 So.2d 887 (Fla. 1983). Counsel should be diligent in keeping records of services rendered and time expended in prosecuting the claimant's case to aid the deputy commissioner in adequately considering the statutory factors. Brevard Community College v. Barber, 488 So.2d 93 (Fla. 1st DCA 1986).
*1315 Nonetheless, in the instant case, despite Mr. Sicking's omission in this area, we are equally as dismayed by the lack of any clear-cut objection made below by the E/C on this point. In Rinker Materials Corp. v. Hill, 471 So.2d 119 (Fla. 1st DCA 1985) we noted the following:
All too often we find that attorneys in workers' compensation proceedings remain silent during the hearing before the deputy when incompetent evidence or opinion testimony is offered and received. Perhaps they do so expecting to argue lack of competent substantial evidence on appeal. But they should be aware of the old adage that hearsay received without objection becomes competent proof of the facts recited, and only by making a contemporaneous objection on proper grounds can the error be properly reviewed on appeal. The deputy and the opposing party are entitled to know what evidence is considered objectionable so that the objection can be addressed and perhaps obviated during the hearing.
On that basis, this Court in Hill affirmed the award of an attorney's fee of $42,000, despite the chance that expert testimony on the present value of future psychiatric care awarded the claimant may not have been competent or probative as being erroneously based on facts not supported by the record.
In the instant case, the chief commissioner specifically addressed the issue of Mr. Sicking's failure to present time sheets or an affidavit to verify the 185 hours allegedly expended. Nevertheless because of our distaste of such "gotcha" techniques, whereby a party is lulled into a false sense of security due to a lack of a proper objection (and we are not of the opinion that the E/C made a proper objection in the instant case despite the chief commissioner's ruling), and in light of the legislative mandate requiring consideration of time and labor, we remand this issue to be revisited to the extent of any evidence presented by Mr. Sicking verifying his hours.[3]
Turning next to claimant's second point, under which she argues that the chief commissioner erred in awarding an attorney's fee of $2,400 when the statutory guideline fee is $28,614.46 based on the benefits achieved, we initially agree with the chief commissioner's finding that counsel is not entitled to a fee based on the permanent total disability benefits. On this point, claimant relies on the holding in Boyd v. Southeastern Utilities Service Company, 172 So.2d 817 (Fla. 1965), which stated that in any case in which compensability is initially controverted, the total benefits ultimately received by the claimant constitute a material element in fixing fees, and any award for legal services prior to a final determination of total compensation payable must be interlocutory in nature. The significance of that holding to claimant is in regard to the claim for temporary total and permanent total disability benefits filed in 1978. Claimant argues that the E/C was obligated to either pay benefits or file a notice to controvert. Instead, because the E/C chose to deny compensability in the pretrial conference on November 13, 1979, claimant maintains that their ultimate payment of PTD benefits was compelled by the subsequent order awarding the TTD benefits. Claimant urges that Boyd is "still good law" and was not overruled by International Paper Co. v. McKinney, 384 So.2d 645 (Fla. 1980), relied on by the chief commissioner, which, according to claimant, is also distinguishable on the basis that no claim in McKinney for permanent total disability had ever been filed, the carrier had not denied compensability, and the carrier had accepted permanent total disability within the statutory limitation following an award of temporary total disability.
In all due respect to claimant's argument, the supreme court in International Paper Co. v. McKinney implicitly overruled *1316 Boyd when it receded from its earlier decision in Ford v. Cunningham  Limp Company, 203 So.2d 326 (Fla. 1967), which in turn expressly relied on Boyd for its holding. See also Moss v. Keller Industries, Inc., 393 So.2d 574 (Fla. 1st DCA 1981). In McKinney, the supreme court said:
Stated simply, the factual situation is as follows: An employer initially controverts a claim. The claim is allowed as to temporary disability and the claimant's attorney is awarded a fee. The employer pays the temporary disability as ordered. When the claimant reaches maximum medical improvement, the employer voluntarily pays permanent disability within the twenty-one-day time limit. The claimant's attorney seeks an additional fee based on the permanent benefits obtained. The judge of industrial claims ruled that the attorney was entitled to a fee. We disagree... .
384 So.2d at 647.
An employer's contest of a claim at the beginning of a case does not lock the employer into paying attorneys' fees on all subsequent benefits paid if the employer voluntarily and timely pays the additional benefits.
Id. at 648.
Claimant, of course, argues the obvious corollary of this rule that here the E/C are responsible for attorney's fees incurred in connection with the subsequent PTD benefits since it contested that award, both initially in regard to the 1978 claim, and later, when it "untimely" accepted claimant as permanently and totally disabled. We disagree with both contentions.
As to her first contention, it is irrelevant that in 1978 claimant filed a "shotgun" claim for all benefits due, including PTD benefits, insofar as the deputy determined that claimant was temporarily and totally disabled, and his order adjudicating that issue was not appealed and became final. Compare Williams v. Delta Upsilon Fraternity, 462 So.2d 552 (Fla. 1st DCA 1985). Thus, at the time the E/C commenced paying PTD benefits claimant had always been temporarily and totally disabled.
Neither is claimant due a fee based on the fact that the E/C paid TTD benefits beyond the period to which she was entitled to those benefits, and thereafter began voluntarily paying PTD benefits, on the theory that the benefits were untimely paid. Under section 440.34(1), Florida Statutes (1973), three conditions are set forth upon which the employer may be compelled to pay attorney's fees, one most significantly being when the employer shall decline to pay a claim on or before the twenty-first day after notice thereof. However, as the chief commissioner properly concluded herein, where an employer has voluntarily furnished the claimant with all requisite benefits, an award of fees will not be justified based solely on a claimant's achieving a "legal label" change for his disability. Basford v. Florida Power & Light Company, 246 So.2d 1 (Fla. 1971); Creighton v. Sears, Roebuck & Company, 190 So.2d 762 (Fla. 1966).
This case presents a scenario similar to the one in Samper v. W.B. Johnson Properties, Inc./Holiday Inn, 481 So.2d 88 (Fla. 1st DCA 1986), wherein the claimant prevailed on the issue of compensability. Thereafter, the deputy commissioner awarded benefits and ordered the E/C to pay a reasonable attorney's fee pursuant to section 440.34(3)(c), Florida Statutes. (The claimant was injured in a March 1981 accident.) Such fee was not paid and a hearing was held to determine the amount. At the hearing, an issue arose as to whether the fee awarded should be an "interim" fee with the view that the claimant might subsequently be entitled to more fees depending upon her future entitlement, if any, to further compensation awards. However, the deputy rejected that theory and ruled that the fee awarded should be denominated "final." In affirming, this Court relied on McKinney in holding that her entitlement to fees for prosecution of subsequent claims depended upon her establishing "anew" any of the requisite statutory grounds.
*1317 In Samurai of the Falls, Inc. v. Sul, 509 So.2d 359 (Fla. 1st DCA 1987), we had a more recent opportunity to discuss the McKinney opinion. Through the efforts of his attorney, claimant Sul achieved an increase in his average weekly wage and corresponding compensation rate. The E/C conceded at the fee hearing that the attorney was entitled to a fee for obtaining that increase. Subsequently, Sul's attorney was also successful in prosecuting a claim resulting in an award of TTD benefits earlier terminated by the E/C for a two month period. According to the chronology of events included in the fee affidavit, the E/C began paying wage-loss just prior to the hearing, although we noted that it did not appear from the record that the commencement and payment of wage-loss was anything but voluntary.
Following a subsequent fee hearing, the deputy commissioner found bad faith based on the E/C's initial delay in payment of the proper compensation rate and on their refusal to voluntarily pay the contested period of TTD benefits. He established as a basis for the fee the increase in the compensation rate and benefits secured from the date the TTD benefits were improperly terminated to the time of the hearing. In so doing, the deputy obviously found that the later commencement of wage-loss benefits by the E/C was the result of the attorney's efforts. Although no express finding was made on that point, the deputy, pursuant to Prestressed Systems v. Goff, 486 So.2d 1378 (Fla. 1st DCA 1986), went on to find a fee due on "all reasonably predictable benefits." Based on testimony of a rehabilitation counselor, he found it reasonably predictable that the E/C would be responsible for wage-loss benefits of $253 weekly through the end of Sul's entitlement thereto. Based on total benefits acquired of $140,679, and using the formula found in section 440.34(1), the deputy computed a fee of $21,851.
In reversing, we found that the deputy erred in relying on Goff. In so doing, we reviewed McKinney and compared it to Goff and Polote Corporation v. Meredith, 482 So.2d 515 (Fla. 1st DCA 1986), noting that in Goff this Court held that a claimant may obtain an award of fees based on the "`value of all anticipated benefits flowing to the claimant from the compensable injury, if at the time of the entry of an order establishing the claimant's right to have attorney's fees assessed against the employer, such benefits could be considered reasonably predictable.'" Sul, 509 So.2d at 362. Recognizing that McKinney was expressly distinguished in Goff on the basis that in Goff there was one claim for fees "`based on all reasonably predictable benefits resulting from the scope of the issues already litigated,'" id. at 362-363, we concluded in Sul,
... [t]he end result of these holdings [McKinney; Goff; Polote Corporation v. Meredith] is that, before the "reasonably predictable" issue can be determined, it must be shown that the benefits on which the fee is desired to be based resulted from the attorney's efforts on behalf of his client and from the scope of the issues already litigated... .
We therefore find that the payment of permanent benefits did not in any way "flow from" any activity on the part of Sul's attorney, or depend upon the scope of issues litigated by him.
Id. at 363 (emphasis added).
In the same sense, the permanent total disability benefits paid by the E/C in no way resulted from Mr. Sicking's efforts or flowed from the scope of the issues already litigated. Consequently, the chief commissioner properly declined to consider those benefits in calculating the award.
On the other hand, insofar as the chief commissioner limited his consideration of benefits achieved to those temporary total disability benefits paid up to the date of the July 1980 award, we hold that he erred. As of the time of the attorney's fee hearing, claimant had received 350 weeks of temporary total disability benefits, *1318 much of which was directly attributable to the efforts of Mr. Sicking arising from the litigation leading to the July 11, 1980 order. Although the E/C, after that order, paid all temporary total disability benefits due and owing, the rule is that an attorney's fee should be determined on the basis of the total benefits secured as the result of the lawyer's intervention.
This case is similar to the circumstances in Jackson v. Dade County School Board, 484 So.2d 1290 (Fla. 1st DCA 1986). Claimant Jackson was injured on November 10, 1981, and was released to work on February 23, 1982, on which date all benefits were terminated. However, since Jackson continued to suffer from pain and remained without employment, in February of 1982 she retained counsel to pursue a claim for benefits. After several attempts by her lawyer to acquire further medical care, the employer finally agreed to have Jackson examined by a neurosurgeon in June 1982. Following tests, and based on the neurosurgeon's opinion rendered during a deposition on December 28, 1982, that Jackson was temporarily and totally disabled from the time he first saw her, the employer reinstated benefits.
In June 1985, following a hearing held for a determination of whether the employer acted in bad faith in the handling of Jackson's claim, an order was entered awarding a fee predicated on the benefits acquired from June 23, 1982, through December 30, 1982. However, the deputy found that the employer had voluntarily paid all benefits due and owing after December 30, 1982, and consequently held that no fee was due on those benefits. In reversing, this Court specifically found that if it had not been for the intervention of Jackson's counsel in the case, she would have remained without necessary medical care and would not have received the disability benefits provided by the employer subsequent to December 1982. Accordingly, we concluded that the award of attorney's fees should have been based upon "the total benefits secured." We found it irrelevant that the employer paid Jackson benefits "voluntarily" following the rendition of the neurosurgeon's opinion on her condition, instead concluding that "but for" counsel's insistence and efforts in securing the neurosurgeon's opinion, those benefits would never have been forthcoming.
We consider the same reasoning to apply in the instant case.[4] Accordingly, on remand, the deputy commissioner is directed to reconsider the award based in part on the full amount of temporary total disability benefits achieved by claimant's attorney to which claimant was entitled under the statute.[5]
Next, in response to claimant's position that the fee should be based on the adjustment to the compensation rate computed according to claimant's life expectancy and reduced to present value, we affirm the deputy's award of $741.85 as far as it goes in relation to the TTD benefits. To allow Mr. Sicking a fee based on this adjustment calculated to a present value of future adjustments, as well as to receive a fee based on the total of the corrected temporary total disability benefits paid would result in the E/C's having to pay a fee twice for the same benefit. However, Mr. Sicking is entitled to a fee based on that adjustment as it extends beyond the *1319 TTD benefits into the period of permanent total disability. Claimant would not be receiving the present amount of PTD benefits but for Mr. Sicking's achievement of the compensation rate correction.
A similar analysis would hold true for the social security offset correction. Thus, insofar as it relates to the payments of TTD benefits the award of fees based on $671.92 due for this improper calculation, plus interest, is affirmed. However, as far as that offset adjustment may apply to the permanent total disability benefits, since Mr. Sicking did achieve the adjustment for claimant, it would amount to a reasonably predictable benefit resulting from the scope of the issues already litigated, Sul, and should be taken into consideration on remand.
However, we do find error in the chief commissioner's considering only the $3,135 in medical payments. Initially, we note that the order incorrectly refers to that sum as having been awarded by the April 2, 1980 order. To the contrary, it was during the August 31, 1978 conference that the E/C agreed to pay medical bills totaling that amount. Instead, the April 2, 1982 order was concerned solely with the E/C's improper de-authorization of Dr. Goldberg, and specifically ordered payment of "the outstanding bill of Dr. Leonard Goldberg for services rendered after [the E/C's] attempt at de-authorization ... the medications prescribed by Dr. Goldberg ... and ... medical transportation incident to such medical care." That aspect of the order was not discussed by the chief commissioner and on remand should be readdressed by the parties.
Nevertheless, we do affirm the chief commissioner's denial of a fee based on the future medical benefits awarded by the April order. There was no evidence, expert or otherwise on that point, other than Mr. Sicking's speculation as to the amount of or need for medical treatment in the future. Cf. Basford v. Florida Power & Light Company.
Claimant next argues that the chief commissioner erred in holding the September 1980 signed stipulation of the parties was not binding on the carrier. We agree with the chief commissioner that the stipulation was of no force and effect due to its not having been approved by a deputy commissioner. Apart from the fact that the stipulation itself required approval by a deputy commissioner, section 440.34(1), Florida Statutes (1985), also requires such approval. Moreover, the $2,066.54 fee was improperly labeled as being an "interim" fee. Samper v. W.B. Johnson Properties, Inc. Nonetheless, insofar as it was characterized as an "installment" by Mr. Sicking during oral argument, the deputy shall take that amount into consideration in redetermining the fee.
Finally, we disagree with claimant's last point that the chief commissioner erred in failing to award a fee for the three and one-half hours expended by Mr. Sicking in preparation for and attendance at the hearing on attorney's fees. Since the filing of claimant's brief, the supreme court issued its opinion in Crittenden Orange Blossom Fruit v. Stone, 514 So.2d 351 (Fla. Sept. 10, 1987), wherein it approved the decision of this Court that the award of attorney's fees should include the time spent by the claimant's attorney in preparing for and prosecuting the claim for attorney's fees. Crittenden Orange Blossom Fruit v. Stone, 492 So.2d 1106 (Fla. 1st DCA 1986). The significance of this approval, and the reason why it is not controlling, is that the supreme court agreed with this Court's view "that because the present workers' compensation law places primary responsibility for the claimant's attorney's fees on the claimant, those limited instances in which the claimant may recover attorney's fees represent a substantial benefit to the claimant." 514 So.2d at 353. (Emphasis added.) Indeed, in our Stone opinion we observed that "prior to the amendments, payment of attorney's fees to the successful claimant's attorney was assured, there usually being no issue except for the amount of the fee." 492 So.2d at 1110.
Thus, Stone is expressly applicable only as to claims arising under the "new law," *1320 post-1979 cases, and, most importantly, "does not extend ... to cover the time spent by the attorney in establishing the amount of the fee." 514 So.2d at 353. Thus, the chief commissioner did not err in the instant case in failing to consider the three and one-half hours spent by Mr. Sicking in preparation for and attendance at the hearing to establish the amount of his fee. Compare Osceola Petroleum Company v. Heard, IRC Order 2-3347 (February 13, 1978) (wherein the Industrial Relations Commission held that the claimant's counsel was not entitled to compensation for time spent in the actual preparation and presentation of his claim for a fee, once entitlement to the same was established).
Based on the foregoing, the chief commissioner's order is AFFIRMED in part and REVERSED in part, and the cause is REMANDED for further proceedings consistent with this opinion.
BOOTH and BARFIELD, JJ., concur.
NOTES
[1] The parties and the chief commissioner properly considered this percentage fee schedule although the date of injury preceded the 1977 amendment to section 440.34(1). Okaloosa County Gas District v. Mandel, 394 So.2d 453 (Fla. 1st DCA 1981).
[2] This case is correctly cited as International Paper Co. v. McKinney, 384 So.2d 645 (Fla. 1980).
[3] For direction in this matter, on remand, the parties should be cognizant of the supreme court's recent ruling in Crittenden Orange Blossom Fruit v. Stone, 514 So.2d 351 (Fla. 1987).
[4] In so doing, however, we emphasize the fact that herein the total amount of temporary total disability benefits achieved by Mr. Sicking was a quantifiable amount by the time of the fee hearing. On that basis, we distinguish this case from Santa Rosa Marble, Inc. v. Ubieta, 436 So.2d 311 (Fla. 1st DCA 1983), wherein this Court, relying on Matera v. Gautier, 133 So.2d 732 (Fla. 1961), reversed that portion of the order reserving jurisdiction to award attorney's fees based on future wage-loss benefits. In so holding, we quoted Matera for the proposition that "`[t]o award an indeterminable fee on the basis of future compensation is to place too great an emphasis on the size of the award ...'" 436 So.2d 311. (Emphasis added.)
[5] That amount should not include the approximately six months of TTD benefits paid beyond the statutory period which were ultimately relabelled as PTD benefits, as noted earlier.