460 So.2d 486 (1984)
CELTICS MOBILE HOME MANUFACTURING and Cna Insurance Company, Appellants,
v.
Michael BUTLER, Appellee.
No. AX-105.
District Court of Appeal of Florida, First District.
December 10, 1984.
*487 Richard R. Crooke of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellants.
Richard I. Cervelli, Naples, for appellee.
ERVIN, Chief Judge.
The employer/carrier (E/C) seeks review of a workers' compensation order awarding the claimant attorney's fees pursuant to the bad faith sanctions of Section 440.34(2)(b), Florida Statutes. The deputy commissioner (DC) attributed the finding of bad faith to delinquency in the payments of total temporary disability (TTD) compensation to the claimant, and failure of the E/C to render proper medical care expeditiously. We conclude that the DC erred in finding bad faith as a basis for the award, and therefore reverse.
Claimant suffered a compensable knee injury in 1980, for which the E/C paid TTD and medical benefits. Claimant's initial TTD payment was delayed two to three months and subsequent payments were invariably several weeks delinquent. On March 8, 1981, claimant was released to work, having attained maximum medical improvement (MMI). He was not rehired by the employer, although he held two other jobs from August 1980 through February 1981, and from March 1981 until February 1982. Both jobs were terminated by the employers due to his disability. He was unable to hold a job and suffered continued problems with his knee. In February 1982, claimant's family physician recommended that claimant undergo an arthroscopic examination, and in March claimant, without previously contacting the E/C, first retained an attorney to assist him in securing benefits and the recommended treatment. On March 8, 1982, the attorney sent a letter to the E/C, requesting an arthroscopic examination, and on March 24, 1982 requested a reinstatement of TTD benefits as of March 1, 1982. The E/C authorized an independent examination of claimant's knee on April 6, 1982, although it did not then grant an arthroscopic examination. It also reinstated TTD payments, effective as of March 15, 1982. In April 1982, claimant was evaluated by an orthopedic specialist, who confirmed MMI and recommended no further treatment. Based upon this opinion, the E/C terminated TTD as of May 30, 1982.
Claims were subsequently filed in June and November of 1982 for TTD benefits from March 1, 1982 through March 15, *488 1982, wage-loss benefits for the months of July through October and December of 1982, the payment of unauthorized medical expenses, vocational rehabilitation, transportation, costs, penalties and attorney's fees. Subsequently, at a pre-trial conference in August 1982, the DC observed the claimant's knee to be swollen and suggested that the E/C authorize another examination. This exam, performed in September 1982, also failed to result in a recommendation of the arthroscopic procedure. Finally, in January 1983, an orthopedist did recommend that the procedure be performed. The examination was then timely authorized by the E/C but delayed in performance due to problems not associated with the E/C. When the procedure was finally conducted, it revealed a need for surgical repairs to the interior of the knee. Based upon this evidence, the DC entered an order awarding claimant TPD benefits from June 1 through July 31, 1982; TTD benefits beginning after his unemployment benefits ceased and continuing until claimant reaches MMI,[1] and medical expenses, previously incurred and continuing as the nature of his injury requires. This order was not appealed. A later order was entered, awarding attorney fees on a bad faith theory due to the E/C's delay in paying TTD benefits and in authorizing an additional orthopedist's evaluation of claimant's knee during the summer of 1982.
In interpreting the bad faith attorney's fees sanctions of Chapter 440, Florida Statutes, we have rejected limitation of the remedy's application to instances of active concealment, misrepresentation, or continued course of dishonest dealings by the E/C, holding instead that it also applies where there has been a delay or denial of benefits without a showing of active effort and initiative by the E/C to determine fairly and expeditiously its obligation to place benefits in the hands of the injured worker. Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981). See also Exceptional Children's Home and Nursery, Inc. v. Fortuna, 414 So.2d 1130 (Fla. 1st DCA 1982); Brevard County Mental Health Center v. Adams, 431 So.2d 167 (Fla. 1st DCA 1982). As to the delay in authorizing an additional orthopedist's evaluation as a basis for the award of fees in the instant case, we observe that the E/C promptly provided for examination by appropriate specialists when evidence of claimant's possible entitlement to additional benefits was presented. The E/C's reliance on the opinion of orthopedic specialists was certainly reasonable, and the arthroscopic procedure was authorized immediately upon receipt of an orthopedic specialist's recommendation of that procedure. In so doing, the E/C met its burden of investigation for the purpose of fairly and expeditiously determining its obligation to provide claimant with the requested medical benefits. Under the circumstances presented here, there was no bad faith in the E/C's reliance upon the opinions of appropriate medical specialists, and it was neither required to accept the conflicting opinion of a non-specialist nor, as the DC suggests, to provide a field adjuster to observe the claimant's condition.
The DC's award of fees was also predicated upon a finding of bad faith in the delayed initiation and subsequent continual delinquency of TTD benefits in 1982. After discovering insufficient evidence in the record on appeal, we ordered the DC to supplement the record with support for his finding. The DC responded by providing a transcript of claimant's testimony at the first merit hearing. We have reviewed that testimony and find no competent, substantial evidence to support a finding that the delinquency occurred in 1982. Instead, claimant's testimony reveals that the carrier delayed the first several TTD payments due in 1980. Such action by an E/C may well constitute bad faith under proper circumstances. Here, however, the bad faith actions related to a TTD claim which had been settled and for which all associated *489 benefits had been paid prior to the intervention of claimant's attorney, and were not a contributing factor to the need for such intervention. The E/C's earlier bad faith cannot now form a basis for an award of fees for the successful prosecution of an unrelated claim. Cf. McDonalds Corp. v. Doty, 431 So.2d 291 (Fla. 1st DCA 1983).
The record before us lacks competent, substantial evidence of any bad faith in relation to the claim adjudicated by the DC. A finding to the contrary constitutes a departure from the essential requirements of the law and a clear abuse of the discretion vested in the DC. See Acevedo v. Ampco Products Company, 407 So.2d 376 (Fla. 1st DCA 1981).
REVERSED.
JOANOS and NIMMONS, JJ., concur.
NOTES
[1] Following this order, the recommended surgery was performed and claimant was released on June 27, 1983, with a 10% permanent impairment of his right lower extremity.