549 So.2d 1114 (1989)
VOLUSIA MEMORIAL PARK and Nationwide Insurance Company, Appellants,
v.
Freddie WHITE, Appellee.
VOLUSIA MEMORIAL PARK and Royal Insurance Company of America, Appellants,
v.
Freddie WHITE, Appellee.
Nos. BR-325, BR-386.
District Court of Appeal of Florida, First District.
October 5, 1989.
*1115 John A. Leklem of Sparks, Cooper & Leklem, P.A., Orlando, for appellant, Nationwide Ins. Co.
Daniel C. Shaughnessy and John J. Schickel of Coker, Myers & Schickel, P.A., Jacksonville, for appellants, Volusia Memorial Park and Royal Ins. Co.
Bill McCabe of Shepherd, McCabe & Cooley, Orlando, for appellee.
ZEHMER, Judge.
Freddie White, an employee of Volusia Memorial Park, suffered a compensable injury to his neck and low back on February 9, 1981. Nationwide Insurance Company was the workers' compensation carrier for the employer from the date of the accident to February 1984, at which time Royal Insurance Company of America succeeded Nationwide as the carrier. Pursuant to section 440.34(3)(b), Florida Statutes (1985), the deputy commissioner ordered "the employer/carrier" to pay a $35,000 fee to White's attorney. Nationwide and Royal have filed separate appeals from the order finding both carriers guilty of bad faith in handling the claim. Claimant cross-appeals, contending that the deputy commissioner erred in departing from the statutory formula guideline fee. For the reasons discussed hereafter, we reverse.
Nationwide paid temporary total disability (TTD) benefits to claimant from the date of the accident until November 11, 1982, when it independently determined that claimant had reached maximum medical improvement (MMI) with a 30 percent permanent impairment and stopped the TTD benefits. It was not, however, until March 8, 1983, that Nationwide notified claimant, through a BCL-4 form, that it had removed claimant from temporary disability status and had reclassified claimant to permanent partial disability and wage loss status. Because he had not been receiving any benefits, claimant employed attorney Edward H. Hurt, Sr., to represent him in connection with his claim. On March 23, 1983, Mr. Hurt filed a claim for TTD benefits from November 11, 1982, to date and demanded costs, interest, penalties, and attorney's fees. On April 18, 1983, a notice of hearing *1116 issued scheduling a hearing for June 23, 1983. On April 21, 1983, Nationwide agreed to reinstate TTD benefits because, "per Dr. Harr's report of 11-11-82," claimant had not reached MMI with respect to his back injury. Nationwide issued claimant a check for $903, representing the total overdue payments, and the scheduled hearing was canceled because claimant's attorney withdrew his application for hearing.
On September 8, 1983, claimant's attorney again filed a claim for benefits, this time seeking permanent total disability (PTD) benefits, costs, interest, penalties, and attorney's fees. On October 20, 1983, claimant's attorney withdrew his application for hearing on this claim.
On February 8, 1984, Royal became the workers' compensation carrier for employer and assumed responsibility for White's claim. In April, claimant's attorney obtained a $9.00 per week increase in claimant's compensation rate from Royal in settlement, without a hearing, of a dispute over claimant's average weekly wage.
On January 31, 1985, claimant's attorney filed another application for hearing on the September 8 claim for PTD benefits. A hearing was set for March 6, 1985, and on February 26 the parties entered into a pretrial stipulation agreeing (1) that claimant was seeking PTD benefits, costs, interest, penalties, and attorney's fees; (2) that Nationwide was seeking reimbursement from Royal; (3) that Royal had paid all benefits due; (4) that claimant was not yet at MMI, and (5) that Royal was unable to investigate and handle the claim for permanent benefits. The scheduled hearing was subsequently canceled at the request of claimant's attorney.
Royal continued paying TTD benefits until October 10, 1985, when it inadvertently caused claimant's case to be taken off its diary and as a result ceased paying such benefits. The benefits were reinstated on November 21, however, and all overdue benefits were paid. Thereafter, Royal continued paying TTD benefits through July 30, 1986, at which time it voluntarily accepted claimant as permanently totally disabled. Royal has paid claimant PTD benefits since that date.
A hearing was held on December 5, 1986, on the entitlement to and amount of attorney's fees for claimant's attorney. Both Royal and Nationwide were parties to the hearing. Nationwide stipulated with claimant that on November 11, 1982, Nationwide determined that claimant had reached MMI with a 30 percent permanent impairment and had changed claimant's benefit status from TTD to permanent disability wage loss, and that this erroneous determination and conversion of benefits constituted bad faith under the attorney's fee statute. Royal stipulated with claimant that it had inadvertently suspended claimant's benefits from October 10, 1985, to November 21, 1985. Claimant's attorney, Mr. Hurt, testified to these facts and submitted an affidavit scheduling the time expended in representing the claimant. He expended 41.2 hours on the claim. Hurt further explained that the expected future benefits amount to $362,667, and that the statutory fee calculated under the formula in section 440.34(1) equals $55,150. Affidavits of three other attorneys submitted by the parties opined a reasonable fee would be $55,000, $55,156, and $14,190, respectively.
In the order under review, the deputy commissioner found that Mr. Hurt expended 41.2 hours as claimed, although this was "an extremely conservative estimate of his time." She further found that (1) Nationwide acted in bad faith, as stipulated, causing claimant to suffer economic loss from November 11, 1982, to April 22, 1983; (2) Royal acted in bad faith and without good cause in allowing claimant's benefits to terminate from October 10, 1985, to November 21, 1985, causing claimant to suffer economic loss; (3) past and future benefits to claimant amount to $362,707; (4) but for the intervention of claimant's attorney, claimant would not have recovered any of these benefits, "and, therefore, claimant's attorney is entitled to have his fee, based on the amount of benefits set out in Finding # 3 above"; and (5) the statutory fee calculated under the formula in section 440.34(1) is $55,149. The order then recited that the deputy commissioner had considered *1117 the attorney fee affidavits, the time involved, the attorney's skill, the nature of the legal questions presented, the fact that the attorney's acceptance of this case precluded him from representing insurance companies generally, the amount of benefits involved, the attorney's reputation and experience, and that the case was taken on a contingent fee basis. After applying these factors pursuant to section 440.34(1) and Lee Engineering Construction Co. v. Fellows, 209 So.2d 454 (Fla. 1968), the deputy commissioner determined a reasonable fee to be $35,000, and ordered "employer/carrier" to pay it. The order made no apportionment of this amount between the two carriers.
Each carrier appealed from this order. Both take issue with the deputy commissioner's finding that claimant would not have recovered past and future benefits amounting to $362,707 absent the intervention of claimant's attorney, and her use of that figure as the basis of the fee award. Both carriers argue that the order is not supported by adequate findings of fact, leaving it insufficient as a matter of law. Royal also contends that the deputy commissioner's finding that Royal had acted in bad faith was erroneous because not supported by competent, substantial evidence, and no factual basis for such finding was set forth in the order as required by section 440.34(3)(b), Florida Statutes (1985). The claimant has cross-appealed, contending that the deputy erred in departing from the statutory formula guideline fee.
We observe at the outset that the deputy commissioner erred in ordering both carriers to pay the award without apportioning the amount of the award attributable to each carrier's bad faith conduct. The record contains no evidence that either carrier was acting as an agent on behalf of the other in handling the claim, and there is no evidence that either carrier assumed the obligation to pay an award of attorney's fees based on the other carrier's bad faith. There is no showing that the acts of bad faith of both carriers were in concert. Without a finding of such agency relationship, assumption of liability, or concerted action, neither carrier can be held vicariously liable for the bad faith acts of the other carrier. The deputy commissioner should have determined the amount of services required of the attorney as a result of the bad faith of each carrier severally and awarded a fee against each on that basis. Where the deputy commissioner intends to hold the two carriers jointly liable for the entire fee, the factual basis for doing so must be stated in the order. It was error for the deputy commissioner to order both carriers jointly liable for the entire fee under the circumstances shown in this case.
We agree with Royal, however, that the deputy commissioner erred in finding Royal guilty of bad faith. Neither the evidence in the record before us nor the findings of fact in the order are legally sufficient to support a finding of bad faith. Section 440.34(3)(b), Florida Statutes (1985), provides that bad faith means "conduct by the carrier in the handling of a claim which amounts to fraud; malice; oppression; or willful, wanton, or reckless disregard of the rights of the claimant."[1] Although the statutory language sounds like the standard for punitive damages at common law, it has been construed to impose a less stringent standard, and encompasses a carrier's passive delay or denial of payment of benefits without a showing of active effort and initiative by the carrier to place the benefits due in the hands of claimant. E.g., Grafton v. Sacred Heart Hospital, 504 So.2d 537 (Fla. 1st DCA 1987); Hubbert v. Abco Construction, 488 So.2d 889 (Fla. 1st DCA 1986); Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981). Royal's only default shown by this record, however, was the inadvertent temporary suspension of claimant's TTD payments from October 10 to November 21, 1985. This suspension was purely accidental as a result of mistakenly taking claimant's case off of the diary. Royal insisted that its temporary suspension *1118 of payments was unintentional, and the record contains no evidence that Royal's action was intentional, malicious, or the result of callous or wanton neglect. There was no evidence that Royal did not reinstate payments as soon as it realized its mistake. On the contrary, Royal reinstated payments immediately upon discovering its error and made the back payments due claimant without any inquiry from claimant's attorney about the lapse in payments, rather than because of the intervention by claimant's attorney as found by the deputy commissioner. Royal's acts in this case simply do not meet the statutory definition of bad faith. See Celtics Mobile Home Manufacturing v. Butler, 460 So.2d 486 (Fla. 1st DCA 1984).
Furthermore, the appealed order fails to contain a sufficient statement of the specific facts to support the finding of bad faith. In 1983, section 440.34(3)(b) was amended to require the deputy commissioner to "issue a separate order which shall expressly state the specific findings of fact upon which the determination of bad faith is based." We recognize that the accident in this case occurred in 1981, that the substantive rights of the parties are fixed as of the date of the injury and are not subject to impairment by subsequent amendment of the law, and that this general rule applies to the statutory provisions governing the award of attorney's fees. Sullivan v. Mayo, 121 So.2d 424 (Fla. 1960), cert. denied, 133 So.2d 647 (Fla. 1961). This general rule does not, however, apply to procedural enactments. City of Clermont v. Rumph, 450 So.2d 573 (Fla. 1st DCA), rev. denied, 458 So.2d 271 (Fla. 1984); W.R. Grace v. Marshall, 405 So.2d 444 (Fla. 1st DCA 1981). The 1983 amendment requiring a separate statement of specific findings of fact is procedural in nature and thus binding upon the deputy commissioner in this instance. The general statement in the order that Royal "did act in bad faith and caused the claimant economic loss by allowing his benefits to terminate from October 10, 1985, to November 21, 1985, without good cause" is not sufficient to comply with this statutory requirement.
Both Royal and Nationwide contend that the deputy commissioner erred in considering the value of PTD benefits in determining the attorney fee award because the record does not support a finding that claimant's attorney secured these benefits. Section 440.34(2) requires that, in awarding a reasonable attorney's fee, the deputy commissioner consider "only those benefits to the claimant that the attorney is responsible for securing." The record reveals that on September 8, 1983, claimant's attorney filed the first claim for PTD benefits. On October 20, 1983, claimant's attorney withdrew his application for hearing on this claim. This occurred while Nationwide was the carrier. Thereafter, on January 31, 1985, when Royal was the carrier, claimant's attorney again requested a hearing on the September 8 claim for PTD benefits. Yet, on February 26, 1985, claimant stipulated with the employer and the carriers that claimant had not reached MMI, and shortly thereafter claimant's attorney again canceled the request for hearing. In the meantime, Royal continued to pay claimant TTD benefits. Eventually, on July 30, 1986, Royal voluntarily accepted claimant as permanently totally disabled and began paying PTD benefits without any further intervention of claimant's attorney. There simply is no evidence in this record that claimant's attorney obtained the PTD benefits. Moreover, there is no finding of fact in the order nor any evidence in the record as to when claimant actually reached MMI.
Claimant relies on Grafton v. Sacred Heart Hospital, 504 So.2d 537 (Fla. 1st DCA 1987), as supporting his contention that the value of PTD benefits was properly considered by the deputy commissioner, arguing that Royal did not present any evidence it investigated the claim for PTD benefits during the time between the filing of the claim and the acceptance of claimant as PTD. This argument misses the point, however. In Grafton the affirmative duty to actively investigate arose because the employer and carrier were placed on notice that the claimant's physician would testify that claimant was then permanently totally disabled. Here, there is no evidence that *1119 Royal was placed on notice that claimant had reached MMI, a prerequisite to payment of PTD benefits, Southern Bell Telephone & Telegraph Co. v. Rollins, 390 So.2d 93 (Fla. 1st DCA 1980), in advance of the time it accepted claimant as permanently totally disabled. In short, nothing in this record shows any failure of Royal or Nationwide to timely investigate and accept the claim for PTD benefits so as to give rise to either carrier's liability for bad faith attorney's fees.
In summary, we find it necessary to reverse the order awarding attorney's fees to claimant's attorney. The evidence does not support a finding of bad faith on the part of Royal, and claimant's claim for attorney's fees against that carrier pursuant to section 440.34(3)(b) must be denied. Although Nationwide stipulated that its dereliction in temporarily suspending TTD payments between November 11, 1982, and April 21, 1983, amounted to bad faith under the statute (a concession with which we readily agree), the attorney's fee due for that dereliction must be based on the temporary disability benefits obtained for that period without regard to any permanent disability benefits thereafter accruing to the claimant, because the claim for PTD was not even filed until September 8, 1983, long after Nationwide had reinstated the TTD payments in correction of this dereliction as the result of claimant's attorney's intervention. Furthermore, as previously indicated, there is no basis on this record for holding either carrier liable for attorney's fees for obtaining the PTD benefits.
In view of this disposition of the appeal, we find it unnecessary to address the issue raised on appellee's cross-appeal. The cause is remanded for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
WENTWORTH and BARFIELD, JJ., concur.
NOTES
[1] This language also appeared in section 440.34(2)(b), Florida Statutes (1979). This language was moved to section 440.34(3)(b) in 1980, and has remained so since that time.