ERVIN, Judge,
dissenting.
Although I agree that the evidence supports the judge of compensation claims’ (JCC) finding that the carrier acted prompt *192 ly in paying bills upon receipt, I do not find record support for his additional finding stating that “when it was called to her [the adjuster’s] attention that other bills of Dr. Matthews remained unpaid, she promptly and timely requested Dr. Matthews’ office to submit the additional billings.”
In order to have a complete understanding of whether the carrier acted in bad faith in its handling of the unpaid medical bills, a careful recitation of the pertinent events is, I think, required. There were several billings by treating physicians covering different time periods, including services rendered from December 20, 1985 through December 27, 1985; January 7, 1986 through March 18, 1986; and April 22, 1986 through May 15, 1986. Appellant filed a claim on February 12, 1987, seeking, among other things, the payment of unpaid bills in the total amount of $790.00 for services rendered by Dr. Matthews’ office between January 7, 1986 and March 18, 1986. Appellant testified without contradiction that at sometime during the year 1986 he informed Ms. Mullins, the adjuster, that he had been mistakenly billed by Dr. Matthews’ office and requested that the bills be paid by the carrier. The adjuster herself testified that the bills at issue were not in fact paid until April 6, 1987.
It is true that Ms. Mullins stated at one point in her deposition that she “had repeatedly asked Dr. Matthews’ office to send me the billings, as well as Mr. Blick; that if he was getting dunning notices of some kind or notice in the mail to please forward them to me and I would immediately straighten them out.” If this is the testimony that the judge below relied upon in reaching his finding that the adjuster had properly and timely requested Dr. Matthews’ office to furnish the additional billings, I submit that given the length of time that had elapsed from the end of the billing period to the time the bills were finally paid — a period of more than one year — the adjuster’s testimony in this regard should either be dismissed as unworthy of belief, or should instead be considered to apply to a different billing period than the one at issue.
Indeed, the record in my judgment supports the view that whatever efforts the adjuster undertook to obtain billing information occurred before the applicable time frame in dispute. There appears to have been a great deal of confusion in the treating physicians’ offices regarding whether claimant’s injuries were industrially related — confusion that may have been engendered by the employer’s delay in reporting the claim to the carrier. The adjuster testified by deposition that although the claimant was injured during the course and scope of employment on November 5, 1985, she was not given notice of such fact until January 27, 1986. Considering the above facts, together with the following response made by the adjuster to the question asking when the injury was first reported, I conclude that her requests for billing information referred to the first billing period, i.e., the time from December 20 through December 27, 1985:
The bills in question — It’s my understanding they were initial bills for November and December of ’85, prior to the claim being reported to us. Apparently it was unclear to Dr. Matthews’ office that this was a work comp claim and they had been billing the claimant directly and they had never been forwarded to me. I had repeatedly asked Dr. Matthews’ office to send me the billings, as well as Mr. Blick; that if he was getting dunning notices or some kind of notice in the mail, to please forward them to me and I would immediately straighten them out.
Later during her testimony when she was specifically asked, “What was the total of your efforts to try to find out the amounts owed from January of ’86 until, I believe, the period was, March of ’86?” Ms. Mullins responded, “I also show on May 14, ’86, I dictated a formal letter to Dr. Matthews. That was a routine letter asking for medical information, maximum improvement information, as well as ongoing information on the claim for ongoing orthopedic treating.” When asked whether the letter requested any bills, Ms. Mullins answered that it did not, explaining, “I have a very good working relationship with *193 Matthews’ office and I feel this put them on formal notice of who the carrier was and our address. And I would have thought the bookkeeper would have forwarded anything at that time had she needed to.”
We must remember that the critical evidence in this regard was presented to the JCC in the form of deposition testimony, and the JCC, in weighing the credibility of the deponent’s answers, occupies no superi- or position to our own. To the contrary, our vantage point in interpreting evidence presented by deposition is equivalent to that of the JCC. See, e.g., Metropolitan Transit Auth. v. Bradshaw, 478 So.2d 115, 116-117 (Fla. 1st DCA 1985); Poorman v. Muncy & Bartle Painting, 438 So.2d 1371, 1372 (Fla. 1st DCA 1983); Haga v. Clay Hyder Trucking Lines, 397 So.2d 428, 431 (Fla. 1st DCA), review denied, 402 So.2d 609 (Fla.1981).
In resolving the discrepancies in the adjuster’s testimony in a manner consistent with all the evidence and reason, I consider that the only logical conclusion that can be reached is that the adjuster admitted that she did not specifically request any bills for the period of time to which the claim in question was directed, but simply assumed, due to the good working relationship she had enjoyed with the physician’s office, that the bookkeeper would, apparently without any further prompting from her, forward the bills to her.
Such passive conduct on the part of the carrier does not, in my judgment, comply with the self-executing nature of the Workers’ Compensation Law. As we have repeatedly stated, a finding of bad faith applies when there has been a delay or denial of benefits without a showing of active effort and initiative by the E/C to determine fairly and expeditiously its obligation to place benefits in the hands of the injured worker. See, e.g., Grafton v. Sacred Heart Hosp., 504 So.2d 537, 538 (Fla. 1st DCA 1987); Celtics Mobile Home Mfg. v. Butler, 460 So.2d 486, 488 (Fla. 1st DCA 1984); City of Tampa v. Fein, 438 So.2d 442, 444 (Fla. 1st DCA 1983), receded from on other grounds, Crittenden Orange Blossom Fruit v. Stone, 492 So.2d 1106 (Fla. 1st DCA 1986); Florida Erection Servs., Inc. v. McDonald, 395 So.2d 203, 211 (Fla. 1st DCA 1981).
The failure by the carrier at bar to actively investigate the question of whether the medical bills of Dr. Matthews’ office had been paid cannot in my judgment be excused. The carrier’s passive or indifferent conduct, in the face of its knowledge of the bills’ nonpayment, subjects it under established case law to a bad faith award of attorney’s fees.