SHIVERS, Chief Judge.
The employer/carrier (E/C) appeal a workers’ compensation order awarding claimant’s attorney a fee for procuring a transfer from one medical facility to another. We reverse.
Claimant sustained compensable injuries in a 1982 accident which left him quadriplegic and ventilator dependent. His condition is chronic, and requires constant monitoring and attendance in the form of inserting catheters into his trachea in order to suction fluid, and adjusting his ventilator to increase the oxygen rate. Since the accident, claimant has resided at several of the different hospitals in the Miami area which offer ventilator assistance, and has been attended to by Sam Feldman, a rehabilitation coordinator with Mick Shatto & Assoc. Claimant was initially placed at Baptist Hospital, then moved at some point to a facility known as Health South. When Health South closed in July 1988, he was transferred to North Miami Hospital. When North Miami Hospital moved to Bro-ward County in January 1989, claimant was moved to Bon Secours Hospital.
Approximately one week after arriving at Bon Secours, an accident occurred in which the patient in the bed next to claimant choked to death while being fed by their mutual attendant. Around the time of this incident, claimant began to complain to Mr. Feldman about the care he was receiving at Bon Secours. Feldman immediately investigated claimant’s complaints and filed a report on February 9, 1989 stating: (1) that claimant desired an immediate transfer out of Bon Secours; (2) that there were no other ventilator facilities in the Miami area other than nursing homes and Baptist Hospital; (3) that claimant had “expressed a completely negative attitude toward being sent to a nursing home;” (4) that Baptist Hospital was inappropriate since it was an acute care facility and claimant’s condition was chronic; and (5) that Mike Shatto, with whom Feldman spoke on February 1, 1989, would not authorize the transfer from Bon Secours “at this time.” Mr. Shatto strongly recommended that one week in this facility was not enough time for the claimant to make the adjustment to the facility or for the facility itself to make the adjustment necessary to deal with the minor day-to-day attention that this claimant needs. Feldman recommended in his report that he “continue with coordination of this case as necessary.”
Claimant continued to complain about the care he received at Bon Secours, and on March 13, 1989, the E/C’s attorney (Robert Rodriguez) arranged a meeting with the Bon Secours staff to discuss the matter. At approximately the same time, Feldman learned of a new facility in Miami called Allied, and recommended on March 20, 1989 that claimant be moved from Bon Secours to Allied. The recommendation was neither rejected nor controverted by the E/C in any way, and claimant was moved to Allied on March 24, 1989.
The record indicates that the only claim for transfer of facilities ever filed in this case was dated November 29, 1988, and was filed while claimant was still at North Miami Hospital. At that time, claimant’s attorney (Howard Pelzner) requested a transfer from North Miami back to Baptist “or other satisfactory facility,” along with attorney’s fees, interest, and costs.
A hearing was conducted on October 12, 1989 on the issue of attorney’s fees, at which were introduced the live testimony of Pelzner, Rodriguez, and Feldman. It was Pelzner’s position at the hearing that his efforts had been responsible for securing claimant’s transfer from Bon Secours to Allied, that he had spent an estimated 20 hours securing the transfer, and that he was entitled to a fee between $7,500 and $10,000.
Rodriguez did not dispute the approximation of 20 hours, but testified that Pelzner’s November 1988 claim for benefits had *1366 nothing to do with claimant’s transfer from Bon Secours to Allied, and that the E/C never objected to the transfer but fully cooperated with claimant’s wishes and Feldman’s recommendations.
Feldman testified, among other things, that it was Rodriguez who called the meeting with the Bon Secours staff on March 13, 1989, that Rodriguez gave Feldman the authority to transfer claimant if Bon Sec-ours didn’t “shape up,” that the E/C never rejected or controverted Feldman’s recommendations in any way, and that Feldman’s decision to move claimant out of Bon Sec-ours was based solely on claimant's problems at Bon Secours and not on any claim filed by claimant’s attorney. Feldman also testified that the decision to move the claimant from North Miami Hospital to Bon Secours in January 1989 was made on his own, and stated “I don’t think at that time I had any contact with Mr. Pelzner....”
The judge of compensation claims (JCC) entered an order on October 25, 1989 finding: (1) that Pelzner’s filing of the claim in November 1988 “helped the procurement of a change from an unsatisfactory facility....” and (2) that, although Pelzner spent only 20 hours on the claim and conceded that the case was not novel, “because the result of the change was so important to the claimant and considering his experience, I find that a reasonable fee for services rendered to be paid by the employer/carrier is $4,000 together with costs.”
Section 440.34(2), Florida Statutes, states that “[i]n awarding a reasonable attorney’s fee, the judge of compensation claims shall consider only those benefits to the claimant that the attorney is responsible for securing. ... For purposes of this section, the term ‘benefits secured’ means benefits obtained as a result of the claimant’s attorney’s legal services rendered in connection with the claim for benefits.”
In Volusia Memorial Park v. White, 549 So.2d 1114 (Fla. 1st DCA 1989), we held that the deputy commissioner erred in basing attorney’s fees on permanent total disability benefits where there was no evidence in the record that the claimant’s attorney had been responsible for securing those benefits.
In the instant case, there is no evidence in the record that the transfer of the claimant from Bon Secours to Allied in March 1989 was the result of any action on the part of claimant’s attorney, or even that claimant’s attorney’s actions “led to” the transfer. To the contrary, aside from Pelzner’s own assertion at the hearing that his efforts “played a part in the change of facilities,” the evidence indicates that the transfer was brought about as a result of Feldman’s investigation of claimant’s complaints, Rodriguez’s calling of a meeting with the Bon Secours staff, and Rodriguez’s authority to Feldman to find a substitute facility. There is no evidence in the record that Pelzner played a part in the investigation or the transfer, or that he even spoke to claimant, Feldman, or Rodriguez between the time claimant first complained about Bon Secours and the time he was transferred. Although Pelzner claims to have spent approximately 20 hours securing the transfer, he gave no testimony as to how any of those hours were spent, and did not offer into evidence any time sheets or other records which would indicate that he actually did spend time effecting the transfer. Further, both Feldman and Rodriguez specifically testified at the hearing that claimant’s transfer had nothing to do with any action on the part of Mr. Pelzner.
Although Pelzner did file a claim in November 1988, that claim requested the transfer from North Miami Hospital (where the claimant was residing at the time the claim was filed) to Baptist Hospital or some other suitable facility. That transfer did take place on January 24,1989, when claimant was moved to Bon Secours. It was not until later that claimant sought another transfer from Bon Secours. However, no claim appears in the record requesting that transfer. Therefore, even assuming the November 1988 claim alone could form the basis for an attorney’s fee, that claim has no connection with the March 1989 transfer from Bon Secours to Allied.
*1367 We reverse the award of attorney's fees.
REVERSED
JO ANOS and MINER, JJ., concur.