569 So.2d 508 (1990)
Rosalie Czernohus WISEMAN, Appellant,
v.
AT & T TECHNOLOGIES, INC., Self-Insured, Appellee.
No. 89-1696.
District Court of Appeal of Florida, First District.
October 22, 1990.
Stuart F. Suskin, Abrams & Suskin, North Miami Beach, for appellant.
H. George Kagan and Sheryl S. Natelson, Miller, Hodges, Kagan & Chait, Deerfield Beach, for appellee.
JOANOS, Judge.
In this workers' compensation appeal, claimant challenges the amount of the attorney's fee awarded to claimant's counsel. *509 The issues presented for review concern (1) the judge's finding regarding the value of benefits secured to claimant by virtue of her counsel's efforts; (2) the applicability of the decisions in International Paper Co. v. McKinney, 384 So.2d 645 (Fla. 1980) and Samurai of the Falls, Inc. v. Sul, 509 So.2d 359 (Fla. 1st DCA), review denied, 518 So.2d 1274 (Fla. 1987), to the facts of this case; and (3) the judge's finding that claimant's counsel expended only thirty to thirty-five hours of productive time on the case. We reverse.
On September 18, 1981, claimant incurred a work-related back injury, which the employer accepted as compensable. The employer paid compensation benefits through November 1, 1981, when the authorized treating physician discharged claimant with the view that there were no residual effects of the accident. Compensation benefits were suspended at that time, and claimant was advised to return to work. Claimant continued to experience problems with her back, and on November 25, 1981, claim was filed for payment of past medical bills; future medical care; temporary total disability benefits from November 2, 1981, and continuing until date of maximum medical improvement; wage loss benefits; attorney's fees, interest, and costs. After a hearing, an order was entered awarding temporary total disability benefits from September 18, 1981, to January 15, 1982, and deferring the issues of wage loss benefits and attorney's fees.
On August 11, 1982, claimant was hospitalized and a myelogram revealed disc abnormalities at two levels. The employer disputed responsibility for the hospital bill incurred in connection with the myelogram, because part of the treatment claimant received was unrelated to her back injury. Ultimately, the employer paid half of this bill. On October 24, 1983, claimant underwent diskography, and chymodiactin injections at L/4-5 and L/5-S/1 levels. The treating physician reported a significant breakdown in rapport between himself and claimant, which the physician attributed to claimant's expectation that the treatment rendered would afford greater relief than she actually experienced.
Ultimately, claimant developed a drug dependency, allegedly due to reliance on prescription drugs for her back pain. Because her own efforts to abstain from the prescription drugs proved unsuccessful, claimant went to a drug rehabilitation center for help. She saw a psychiatrist, Dr. Rubin, on the same day. Claimant did not request drug rehabilitation or psychiatric services prior to her first contact with the drug rehabilitation center or with Dr. Rubin. Dr. Rubin found claimant to be in a highly emotional state, and suggested that she be hospitalized. He related claimant's emotional condition to her work-related accident, and concluded that claimant could not function at work at all.
On November 15, 1983, a request was made for authorization of further psychiatric treatment, on grounds that claimant's need for such treatment was due to her compensable injuries. In addition, Dr. Rubin's bill was submitted for payment. The employer refused payment of Dr. Rubin's bill on grounds that his services had neither been requested nor authorized. Further, it was the employer's position that if claimant had developed an emotional dependence on pain medication, it was not attributable to her on-the-job injury, and the employer did not intend to provide psychiatric care.
On December 23, 1983, claim was made for payment of Parkway General Hospital bill, psychiatric care, and attorney's fees. The June 4, 1984, hearing on the claim was postponed by agreement of the attorneys, so that claimant could be treated at a pain center as recommended by a rehabilitation nurse. The employer approved treatment for claimant at Baptist Hospital Pain Clinic. Subsequently, claimant checked herself out of the pain clinic and requested authorization for treatment by a neurologist, Dr. Ross. When the employer failed to respond, claimant's counsel referred her to a neurosurgeon. The employer was notified, and refused authorization of the neurosurgeon. On July 30, 1984, the employer filed a notice to controvert claimant's right to further compensation benefits, and notified all parties of the suspension of voluntary *510 payment of all compensation benefits, with the exception of necessary medical care.
On August 14, 1984, claimant submitted a bill from Parkway Regional Medical Center in the amount of $29.50, for treatment ordered by Dr. Moriber, authorized physician. Claimant also requested payment for therapy ordered by Dr. Moriber, and a neurological evaluation. On September 12, 1984, claimant underwent surgery for removal of two spinal discs.
On December 5, 1984, a hearing was held on the employer's notice to controvert and on claimant's claim for payment of various medical bills, temporary total disability benefits from January 15, 1982, to August 20, 1984, and continuing, and attorney's fees. In an order dated February 18, 1985, the judge of compensation claims found that (1) claimant failed to establish that the services she received at Parkway General Hospital were causally related to her compensable injury; (2) claimant was entitled to temporary total disability benefits from August 20, 1984, and continuing to maximum medical improvement; (3) the parties stipulated that $5,750.00 would be paid in lump sum for the claim for unpaid temporary total disability payments between January 15, 1982, and August 20, 1984; (4) claimant was entitled to reimbursement of $91.60 which she paid to Parkway General Hospital for emergency room care on June 12, 1984, and June 17, 1984; (5) the surgery performed by Dr. Guilianti for disc removal was reasonable and necessary, but claim for payment was barred by section 440.13, because claimant did not seek authorization from the employer and the surgery was not of an emergency nature; (6) the employer consented to claimant's request for future medical care by Dr. Guilianti; (7) claimant was entitled to psychiatric care which had been refused by the employer; and (8) by agreement of both counsel; the issue of attorney's fees was held in abeyance.
In sum, the record in this case reflects that from 1981 until 1985, the employer provided claimant with temporary total disability benefits, medical care, and rehabilitation benefits on an intermittent basis. The total value of these benefits is not documented in the record. On June 28, 1985, the employer filed a second notice to controvert and claim to suspend or terminate compensation benefits. A rehabilitation report filed August 15, 1985, indicates that claimant had returned to school, and that temporary total disability benefits had been reinstated. On September 23, 1985, the employer was notified that the long hours in school had caused an exacerbation of claimant's back problems, for which claimant requested care by an orthopedist. In addition, the employer was advised that the adjuster had withheld compensation checks due June 10 and 17, 1985, and request was made to have the checks sent to claimant.
On January 10, 1986, claimant's counsel advised the employer that again the adjuster had withheld compensation payments, and request was made for payment of same. On February 4, 1986, claim was filed for continuation of schooling, temporary total disability benefits during schooling, authorized medical care, interest, costs, and attorney's fees. On February 12, 1986, the employer filed a notice to controvert the claimed benefits.
On August 4, 1986, in response to a request for evaluation and treatment by Dr. Green, a neurosurgeon, the employer authorized a choice of three other neurosurgeons. On September 16, 1986, the employer was notified that claimant underwent a myelogram on September 4, 1986, and that arrangements had been made for therapy to begin at Parkway Regional Hospital on September 15, 1986. The employer was requested to provide temporary total disability benefits from September 4, 1986, and continuing until the doctors indicated otherwise. In correspondence dated September 30, 1986, the employer was advised that claimant had not received benefits for the latest period of disability.
On October 2, 1986, claimant notified her attorney that she had obtained other counsel. Claimant's original counsel filed a claim for attorney's fees. At the July 2, 1987 hearing on attorney's fees, the statement on attorney's fees was admitted without objection. Counsel's time sheets reflect *511 244.25 hours expended on the case. According to claimant's counsel, the employer's statement indicated that through June 23, 1987, the employer had paid $38,000.00 in benefits. Counsel stipulated that before he entered the case, the employer had paid approximately $800.00 in compensation benefits. The employer's counsel stated that the total value of benefits secured by claimant's counsel was $21,196.00
During the discussion of time spent in the representation, the employer's counsel stated that he employed unit billing, as did claimant's counsel. In this regard, the record reflects that employer's counsel billed for 240.5 hours, a figure comparable to the 244.25 hours reflected on time sheets submitted by claimant's counsel. The employer's counsel emphasized that his unit billing is based on a much lower hourly rate than he bills for actual time logged. At the October 5, 1987, hearing, the employer's second counsel stated that he considered claimant's counsel was responsible for obtaining benefits of $19,984.56 for claimant.
In the order on attorney's fees entered on May 26, 1989, the judge found, among other things, that although claimant's counsel devoted an extraordinary amount of time to the case, only thirty to thirty-five hours were productive of the ultimate results. The judge reasoned that much of counsel's time was devoted to matters not in controversy, noting particularly that "one award of temporary total disability benefits from January 15, 1982 to August 20, 1984, though originally a subject of controversy, was predicated on the stipulation of the parties." The judge further found that "in many instances," the amount of time purportedly spent by claimant's counsel was unnecessarily inflated, and that the benefits secured by claimant's counsel amounted to $10,590.35, an amount considerably smaller than the figures acknowledged by the employer's counsel. Finally, the judge determined that claimant's counsel should be awarded $7,000.00, as a reasonable fee.
The first issue in this appeal is directed to the judge's determination that claimant's counsel secured benefits for claimant in the sum certain of only $10,590.35. Section 440.34(2), Fla. Stat. (1981), states:
In awarding a reasonable attorney's fee, the deputy commissioner shall consider only those benefits to the claimant that the attorney is responsible for securing.
The provision has been construed to mean "that an attorney's fee should be determined on the basis of the total benefits secured as the result of the lawyer's intervention." Barr v. Pantry Pride, 518 So.2d 1309, 1318 (Fla. 1st DCA 1987), review denied, 525 So.2d 876 (Fla. 1988); Jackson v. Dade County School Board, 484 So.2d 1290, 1291 (Fla. 1st DCA 1986). See also Volusia Memorial Park v. White, 549 So.2d 1114, 1116-1117 (Fla. 1st DCA 1989).
Jackson v. Dade County School Board presents a factual scenario similar to that of the instant case. Claimant Jackson injured her back on November 10, 1981, in a work-related incident that initially was accepted as compensable. However, when Jackson was released to return to work on February 23, 1982, all benefits were terminated. Jackson continued to suffer pain and remained unemployed. In February 1982, she obtained counsel to pursue a claim for benefits. After several unsuccessful attempts by her attorney to obtain further medical care, in June 1982 the employer agreed to have Jackson examined by a neurosurgeon. The neurosurgeon performed a C.T. scan and a myelogram, from which he diagnosed a herniated disc. Based on the doctor's opinion rendered during a deposition taken December 28, 1982, that Jackson was temporarily totally disabled from the time he first saw her, the employer reinstated benefits. A hearing was held in June 1985 on the question of bad faith attorney's fees. An order was entered awarding a fee based on benefits obtained from June 23, 1982, through December 30, 1982. The deputy found that all benefits were paid voluntarily after December 30, 1982, and concluded that no fee was due on those benefits. This court reversed, finding that "attorney's fees should be determined on the basis of the total *512 benefits secured as a result of the lawyer's intervention." 484 So.2d at 1291. The court further stated:
If it were not for the intervention of Jackson's counsel in this case, she would have remained without necessary medical care and would not have received the disability benefits provided by the employer subsequent to December of 1982. Accordingly, the award of attorney's fees should have been based upon "the total benefits secured." It is irrelevant that the employer paid Jackson's benefits "voluntarily" following the rendition of Dr. Wancier's opinion on her condition; but for counsel's insistence and efforts in securing Dr. Wancier's opinion, those benefits would never have been forthcoming.
484 So.2d at 1291. Accord Barr v. Pantry Pride, 518 So.2d at 1318.
Here, as in Jackson, once claimant was released to return to work, all benefits ceased. The record in this case indicates that but for the intervention of claimant's counsel, the employer would not have provided further medical care or compensation benefits after claimant was released to return to work. Indeed, the record reflects that even after counsel's first successful intervention, the employer continued to resist many of the benefits requested. Claimant did not receive a definitive diagnosis and treatment of her condition until 1984, when she was treated by Dr. Guilianti, who determined that claimant suffered from two herniated discs. Authorization for treatment by Dr. Guilianti was requested and initially refused. As in Jackson, we conclude that it is irrelevant that the employer voluntarily paid some rehabilitation benefits after claimant's counsel obtained reinstatement of temporary total disability benefits and additional medical care. Here, as in Jackson and Barr v. Pantry Pride, those benefits would not have been forthcoming but for counsel's efforts. See also Groves v. Butler, 525 So.2d 1003 (Fla. 1st DCA 1988).
The second issue is directed to the judge's application of the decisions in International Paper Co. v. McKinney, 384 So.2d 645 (Fla. 1980), and Samurai of the Falls, Inc. v. Sul, 509 So.2d 359 (Fla. 1st DCA), review denied, 518 So.2d 1274 (Fla. 1987), to the facts of this case. We agree with claimant that the cited cases are factually inapposite to the instant case.
In International Paper, the employer initially controverted the claim, then accepted compensability, and paid temporary total disability benefits and an attorney's fee. When the claimant reached maximum medical improvement, the employer voluntarily paid permanent total disability benefits within the 21-day limit required by the statutory scheme then in effect, without a specific claim for permanent total disability benefits having been filed. The court found that a "shotgun" claim for benefits was not sufficient notice of a permanent total disability claim, saying: "An employer's contest of a claim at the beginning of a case does not lock the employer into paying attorneys' fees on all subsequent benefits paid if the employer voluntarily and timely pays the additional benefits." 384 So.2d at 648.
In contrast, in this case, compensability was accepted initially, but benefits were terminated when the claimant, though still in pain, was released to return to work by the treating physician. Benefits were reinstated and continued, albeit intermittently, due to the continuing efforts and monitoring of claimant's attorney. Among other things, the employer's adjuster in Atlanta withheld benefits on two separate occasions, once for no discernible reason. On another occasion, the adjuster withheld checks because claimant missed two weeks of school due to illness. The record demonstrates that but for counsel's efforts, claimant would not have received benefits after November 1981.
In Samurai of the Falls, claimant's attorney achieved an increase in average weekly wage, and subsequently obtained reinstatement of temporary total disability benefits, which had been terminated for a 2-month period. Immediately before the hearing on attorney's fees, the employer/carrier began paying wage loss voluntarily. The deputy found it reasonably predictable *513 that the employer/carrier would be responsible for wage loss benefits through the end of Sul's entitlement thereto, and based an attorney's fee on the value of all benefits  including the projected total value of wage loss benefits. The court examined the decisions in International Paper, Polote Corp. v. Meredith, 482 So.2d 515 (Fla. 1st DCA 1986), and Prestressed Systems v. Goff, 486 So.2d 1378 (Fla. 1st DCA 1986), and found that "[t]he end result of these holdings is that, before the `reasonably predictable' issue can be determined, it must be shown that the benefits on which the fee is desired to be based resulted from the attorney's efforts on behalf of his client and from the scope of the issues already litigated." 509 So.2d at 363. Finding that payment of permanent benefits did not flow from the efforts of claimant's attorney, or depend upon the scope of the issues already litigated by him, the court reversed and remanded for recomputation of the fee.
Id.
Unlike Samurai of the Falls, in this case, the benefits awarded to claimant after November 1981 flowed from the activity of her attorney and depended upon the scope of the issues already litigated by him. The only benefit provided by the employer that arguably could be considered voluntary involved rehabilitation benefits. However, the employer did not initiate retraining. Rather, training was provided upon request and at the recommendation of the Division rehabilitation counselor.
The third issue is directed to the judge's determination that only thirty to thirty-five hours of claimant's attorney's time were productive of the results ultimately obtained. The judge's recorded comments at the attorney's fee hearings in this case indicate that he may have harbored a view that "bad faith" in the workers' compensation arena contemplates egregious conduct, as opposed to the workers' compensation standard of "passive delay or denial of payment of benefits without a showing of active effort and initiative to place the benefits due in the hands of claimant." Volusia Memorial Park v. White, 549 So.2d at 1117. The possible misunderstanding of the bad faith standard in the context of workers' compensation may account for the judge's seemingly arbitrary conclusion that claimant's counsel expended only thirty to thirty-five productive hours on the case. In addition, other language in the order indicates that the judge considered that benefits achieved by stipulation could not be attributed to the attorney's efforts. If, in fact, this was the case, the judge's view of the matter is at odds with decisions from this court.
In addition, an attorney in a workers' compensation case is entitled to recover fees for the effort involved in prosecuting a claim for attorney's fees. Crittenden Orange Blossom Fruit v. Stone, 514 So.2d 351 (Fla. 1987); Ross Adams VTN, Inc. v. Durandal, 509 So.2d 1207 (Fla. 1st DCA 1987); Davis v. Keeto, Inc., 463 So.2d 368 (Fla. 1st DCA), petition for review denied, 475 So.2d 695 (Fla. 1985). In Crittenden, the court observed that although an attorney's fee amount should include the services rendered to prove entitlement to a fee paid by the employer, the holding did not extend "to cover the time spent by the attorney in establishing the amount of the fee." 514 So.2d at 353.
The record in this case reflects that four hearings were held on the issue of attorney's fees. The July 2, 1987, hearing concerned entitlement to an award of attorney's fees to claimant's attorney. Counsel for employer acknowledged that claimant's attorney obtained in excess of $21,000 in benefits for claimant, but urged that most benefits were provided through negotiation rather than by award. Also, the hearing established that claimant's attorney employed unit billing, i.e., a unit charge of fifteen minutes per item, the same billing method used by opposing counsel to bill the employer.
At the hearing of October 5, 1987, the judge was advised that the employer did not oppose claimant's right to an attorney's fee. Rather, the employer questioned the benefits obtained due to counsel's efforts. The employer was represented by different counsel at this hearing. New counsel acknowledged that claimant's attorney had *514 obtained $19,984.56 in benefits, which amount contemplates only those benefits awarded in the two orders. During the second hearing, claimant's counsel was examined concerning the time spent on the claim. The explanations provided by counsel concerning the time involved for each listed activity appear reasonable, and were uncontradicted. The hearing of March 8, 1988, concerned the employer's defenses. At this hearing, the employer's first counsel was examined concerning the handling of the claim, and the adjuster testified by telephone conference call from Atlanta. At the hearing of April 19, 1989, the parties were afforded an opportunity to introduce additional exhibits.
Although there is some overlap of subject matter in the first three attorney's fee hearings, the hearing of October 5, 1987, was most concerned with establishing the amount of the fee. Therefore, pursuant to Crittenden, the time expended by claimant's counsel in preparation for and participation in the hearings of July 2, 1987; March 8, 1988, and April 19, 1988, should be included in the computation of the attorney's fee award, as should any portion of the October 5, 1987, hearing which was not directed toward establishing the amount of the fee which would be prohibited by the Crittenden opinion.
In summary, although the amount of the fee awarded in this case does not constitute an abuse of discretion on its face, the order raises questions concerning the basis of the award. The record does not support the judge's finding that the time claimed was unnecessarily inflated. In addition, the order suggests that the judge considered only those benefits obtained by order, and appears to have discounted benefits obtained by negotiation. Finally, both the transcripts of the proceedings and the order itself suggest that the judge was ambivalent about the basis of an attorney's fee award. The judge seemingly viewed the fact that claimant failed to obtain all benefits sought as indicative of a lack of bad faith, and minimized the value of benefits actually obtained accordingly.
Therefore, the order on attorney's fees is reversed, and the cause is remanded with directions to prepare an order which (1) explains the reason for finding that claimant's counsel expended only thirty to thirty-five hours of productive time in obtaining those benefits, or make other findings pertaining to the time spent; (2) includes the time spent in establishing entitlement to the attorney's fee award in the computation, and (3) reconsidering the attorney's fee award to claimant's counsel.
SHIVERS, C.J., concurs.
ZEHMER, J., concurs with opinion.
ZEHMER, Judge (concurring).
I agree with everything said in the court's opinion. I write only to explain more fully my view that some part of time and effort involved in the October 5, 1987, hearing should be included in calculating the fee. If I understand the facts correctly, the primary issue at that hearing was the value of the benefits obtained due to counsel's efforts. That being so, I do not read the supreme court's opinion in Crittenden as requiring the judge of compensation claims to exclude the time expended to prove that element of the attorney's fee. Although the supreme court's opinion in Crittenden is somewhat confusing as to the operation of section 440.34, and does not directly address the time and cost to prove the value of benefits obtained by the claimant's attorney, in view of this omission it is clear to me that the court's opinion was only dealing with the time and cost of presenting an attorney's opinion testimony regarding the amount of a reasonable fee based on a description of the services rendered and hours expended.
I reach this conclusion on the following reasoning. Under section 440.34 it is essential that the extent and value of benefits obtained through the lawyer's efforts must be established before any attorney can express an opinion on the value of the services. This is so because the statute explicitly requires that a percentage of the value of benefits so obtained be the starting point for setting a reasonable fee. The Crittenden opinion reflects the supreme court's conception that setting a reasonable *515 fee in workers' compensation cases should be a simplistic matter based merely on an attorney's opinion testimony once the statutory predicates are established. The supreme court's opinion does not undertake to deal with the matter of calling a nonlawyer expert witness to establish the extent and value of benefits obtained, reduced to present value. I have no doubt that proving such facts should not be excluded under the Crittenden decision as that opinion simply says that "no expert witness fee may be taxed for the attorney who testifies on the reasonableness of the fee," 514 So.2d at 353, that being the only issue involved in the "third hearing" involved in Crittenden. Absolutely nothing in the Crittenden opinion refers to the matter of proving the extent and value of benefits obtained due to counsel's efforts although the fact that the dollar amount so determined is the essential predicate and starting point in determining the right to and amount of any attorney's fee under section 440.34. In many instances this determination can involve extensive and complicated expert testimony. Thus, just as the court held in Crittenden that time and efforts to prove bad faith [i.e., entitlement] to a fee may be compensated, the time and effort expended in proving the amount of benefits recovered are likewise compensable, and only the time, effort and expense of proving through an attorney's testimony the amount of a reasonable fee in light of the amount of benefits so established should be excluded from the computation of the compensable hours expended.
In the instant case, some of the October 5 hearing may well have involved attorney's testimony such as described in Crittenden which should not be included. However, it is obvious that a significant portion of the time and effort at that hearing was devoted to establishing the extent and value of benefits obtained by claimant's counsel which should not be excluded in assessing fees for proving the entitlement to and amount of a reasonable attorneys' fee.